COLEMAN, Plaintiff-Appellant, v. AMERICAN UNIVERSAL INSURANCE COMPANY, and others, Defendants–Respondents.

Supreme Court

*No. 76–341. Argued November 27, 1978.—Decided January 9, 1979.*
(Also reported in 273 N.W.2d 220.)

For the appellant there was a brief by *Richard A. Sachs, Jr.*, and *Marjan R. Kmiec Law Offices* of Milwaukee, and oral argument by *Mr. Sachs*.

For Crawford & Company and Thomas Elsen there was a brief by *Kenton E. Kilmer, Gregory J. Cook* and *Kasdorf, Dall, Lewis & Swietlik* of Milwaukee, and oral argument by *Mr. Kilmer.*

For American Universal Insurance Company there was a brief by *Robert C. Burrell* and *Borgelt, Powell, Peterson & Frauen, S. C.,* of Milwaukee, and oral argument by *Mr. Burrell.*

HEFFERNAN, J.   The plaintiff, John Coleman, was injured in the course of his employment by the Sentry Food Stores on July 30, 1975. Sentry Foods was insured for worker's compensation by American Universal Insurance Company, which employed Crawford & Company and Thomas Elsen, an employee of Crawford, to adjust worker's compensation claims.

The plaintiff, Coleman, received substantial worker's compensation payments. This action, brought against the compensation insurer, its adjusting company, and Elsen, is not, however, for compensation payments but is for an alleged separate injury arising out of the bad-faith conduct of all the defendants for refusing to honor Coleman's claim and for the intentional infliction of emotional distress.

Coleman alleged that his compensation payments were arbitrarily cut off on at least three occasions when the defendants knew his claim was valid. He alleges that the defendants knew of his inability to work and had in their possession uncontradicted medical reports which demonstrated his continuing entitlement to compensation payments. He alleged that the actions of the defendants were intentional and taken with the knowledge that his physical and emotional condition was adversely affected by their bad-faith conduct. He alleges the defendants acted "arbitrarily, willfully and in bad faith" and "with malice or oppression . . . for the purpose of

saving the company money . . . ." He specifically alleged:

"These acts were intentional, malicious and outrageous, and were meant to take advantage of John Coleman's present physical and mental condition. That these tactics of harassment and delay were meant to cause the plaintiff to give up on his claims, to minimize the amount of the defendants' liability or to cause the [plaintiff] to starve. That such acts are in bad faith and with the intent and effect of causing emotional distress."

The defendants answered, denying the allegations of the complaint. In addition, they moved for summary judgment on the ground that the plaintiff's exclusive remedy was under the Worker's Compensation Act and that, accordingly, the courts had no jurisdiction to entertain this action.

The affidavit of the plaintiff in response to the motions of the defendants alleged additional acts of defendants and stated that the denial of payments caused him to be evicted from his rented quarters and resulted in severe emotional distress. He again stated that he at all times cooperated with the defendants by permitting examinations by physicians and submitting appropriate reports.

At the hearing of the motion in trial court, the plaintiff stressed, as he does here on appeal, that his cause of action is for a separate injury resulting from the intentional tort of the insurer and its agents and that he does not seek remedy for an injury which is covered by, and put exclusively within the ambit of, the Worker's Compensation Act.

The question on appeal, then, is whether a worker who sustains an injury covered by the Worker's Compensation Act may assert in the courts a separate claim for damages where the worker's compensation insurer and

its agent allegedly acted in bad faith in the processing and payment of the claim.

We conclude that, where a worker's compensation insurer acts in bad faith in the settlement or payment of compensation benefits, a separate tort is committed that is not within the purview of the exclusivity provisions of the worker's compensation law and that the separate tort of bad faith may be alleged and proved in the courts. Accordingly, we reverse the judgment that dismissed Coleman's complaint against American Universal Insurance Company, and we reverse the judgment that dismissed the complaint against Crawford & Company and Thomas Elsen.

The tort of bad faith was recently recognized by this court in *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978). It is apparent that the rationale of *Anderson* is applicable not only to the claim of a first-party insured against its insurance company, but is also applicable when the case involves a third-party claim against an insurer.

The defendants herein do not dispute the existence of the tort of bad faith even though their briefs preceded the *Anderson* decision. Rather, their claim is that, because the initial relationship between the insurance company and Coleman arose under the worker's compensation statute, proceedings under that statute are Coleman's exclusive remedy. The trial court accepted that argument, granted the motions for summary judgment, and dismissed the complaint. The trial court thought it unnecessary to determine whether there were controverted factual matters, because of its determination as a matter of law that the plaintiff's exclusive remedy was under the Worker's Compensation Act, ch. 102, Stats.

It is boilerplate law in Wisconsin that the rationale underlying statutory worker's compensation is that workers accept smaller recoveries than those potentially available at common law in return for coverage of all work-related injuries regardless of fault. *See, Hunker v. Royal Indemnity Co.*, 57 Wis.2d 588, 204 N.W.2d 897 (1973), and Page, *The Exclusivity of the Workmen's Compensation Remedy: The Employee's Right to Sue His Employer in Tort*, 4 B. C. Indus. & Com. L. Rev. 555 (1963). Instead of damages, the statutory compensation scheme provides an injured employee with medical care and income maintenance, the latter being figured as a percentage of preinjury income. Sec. 102.43, Stats. Smith and Ramos, *Exclusive Remedy Under Workers' Compensation Laws*, 25 Fed'n of Ins. Counsel Q. 383 (1975).

The compensation remedy is exclusive, however, only if the *injury* falls within the coverage of the act. 2A Larson, Workmen's Compensation Law, sec. 65.00, p. 12–1 (1978). A distinction is made between a covered injury and compensable damages. If an injury is covered by the act, an action for damages is barred, even though the particular element of damages is not compensable under the act. Larson, *supra* at 12–1.

The principle of exclusivity is firmly entrenched in Wisconsin law. Even though the injury is covered by the worker's compensation statute, damages that are not specifically set forth under the statutory scheme may not be recovered. *Kerner v. Employers Mutual Liability Insurance Co.*, 35 Wis.2d 391, 151 N.W.2d 72 (1967); *Beck v. Hamann*, 263 Wis. 131, 56 N.W.2d 837 (1953); *Guse v. A. O. Smith Corp.*, 260 Wis. 403, 51 N.W.2d 24 (1952).

Hence, it is apparent that, if the injury is one covered by the Worker's Compensation Act, the compensation remedy is exclusive. If it is not so covered, the fact that a worker's compensation remedy exists for a separate injury is irrelevant. This rationale is borne out by the express words of the statute. Sec. 102.03(2), Stats. 1973, the provision in effect at the time the plaintiff was injured on the premises of Sentry Foods, stated:

"Where such conditions exist the right to the recovery of compensation pursuant to this chapter shall be the exclusive remedy against the employer and the workmen's compensation insurance carrier."

The conditions which must exist to make the worker's compensation remedy exclusive are set forth in sec. 102.-03(1), Stats. Pertinent to this appeal, the following provisions are relevant:

"102.03 **Conditions of liability.** (1) Liability under this chapter shall exist against an employer only where the following conditions concur:
"(a) Where the employe sustains an injury.
"(b) Where, at the time of the injury, both the employer and employe are subject to the provisions of this chapter.
"(c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his employment. . . .
"· · · ·
"(d) Where the injury is not intentionally self-inflicted.
"(e) Where the accident or disease causing injury arises out of his employment.
"· · · ·"

It is apparent that the injury sustained by the alleged bad-faith conduct of the defendants does not meet these conditions. Certainly, at the time it was alleged that the insurance company arbitrarily terminated compensation

payments Coleman was not performing service growing out of and incidental to his employment. Condition (c) 1. is not satisfied. Moreover, the event—the alleged intentional and malicious withholding of compensation payments—which caused the injury did not arise out of the employment but occurred long after the employment had ceased and had its genesis in conduct by the insurer that arose not out of the employment but out of the contractual obligation of the insurer to pay.

The injury for which remedy is sought in the instant case is the emotional distress and other harm caused by the defendants' intentional acts during the investigation and during the course of payment of the claim. This claimed injury was distinct in time and place from the original on-the-job physical injury which was subject to the Compensation Act. The injury for which recovery is sought in the present actions did not occur while the plaintiff was employed or while he was performing services growing out of and incidental to his employment. As the plaintiff repeatedly and correctly stresses in his brief, this action is based not on the original work-related injury but on a second and separate injury resulting from the intentional acts of the insurer and its agents while investigating and paying the claim. The Act does not cover the alleged injury, and the exclusivity provision does not bar the claim.

We have carefully examined all the cases cited by the defendants and find each of them to be clearly distinguishable from that at issue here. *Guse v. A. O. Smith Corp., supra; Beck v. Hamann, supra;* and *Kerner v. Employers Mutual Liability Insurance Co., supra.* Each involved only one employment-related injury.

Other jurisdictions have heretofore rejected the argument that an exclusive-remedy provision in a worker's compensation statute bars a separate action in tort for the intentional wrongdoing of an insurance carrier in connection with the investigation and payment of claims.

*Stafford v. Westchester Fire Insurance Co. of New York, Inc.*, 526 P.2d 37 (Alaska 1974) ; *Reed v. Hartford Accident & Indemnity Co.*, 367 F. Supp. 134 (E.D. Pa. 1973). In the latter case, the action was not for an employment-related injury, but for an independent injury arising out of the relationship of insurer and insured. The court stated, "The exclusivity of the Act is irrelevant to causes of action which are not covered by it." (at pp. 135–36) *See also, Martin v. Travelers Insurance Co.*, 497 F.2d 329 (1st Cir. 1974), and *Unruh v. Truck Insurance Exchange*, 7 Cal.3d 616, 102 Cal. Rptr. 815, 498 P.2d 1063 (1972). Larson, *supra,* also rejects as spurious any attempt to claim that a second injury sustained as a consequence of the intentional acts of the insurer is merely an extension or aggravation of the work-related injury. Larson points out that the latter argument relies on an extended "but for" analysis that leads to preposterous results. Larson explains:

"It is true that but for the original injury the investigation would never have been undertaken and the second injury would not have occurred. But must we go on to say that the carrier acquires complete tort immunity ever after for anything its agents do to carry out their investigation? Suppose the agent had decided to burglarize the claimant's house to get needed evidence. Suppose claimant died of fright on seeing the burglar. Is the compensation act the exclusive remedy, merely because the activity involved, which was the collecting of evidence, was in the mainstream of the agent's duties?

"Again, suppose a claimant has a compensable broken toe, and is being tailed by a photographer. Claimant sees him in the bushes, a scuffle ensues, and claimant receives a skull fracture as a result of a blow from the camera. Is this skull fracture nothing but an aggravation of the broken toe?" *Id.*, pp. 13–26 to 13–37.

Additionally, the defendants argue that sec. 102.22(1), Stats., bars the action because it provides a remedy for delayed payment of compensation benefits. That section provides:

"102.22 **Penalty for delayed payments.** (1.) Where the employer or his insurer is guilty of inexcusable delay in making payments, the payments as to which such delay is found shall be increased by 10%. Where such delay is chargeable to the employer and not to the insurer s. 102.62 shall be applicable and the relative liability of the parties shall be fixed and discharged as therein provided."

Subsec. (1) provides for a penalty rate of 10 percent for "inexcusable delay" in making payments and is applicable even prior to a department order directing that payments be made. *Milwaukee County v. DILHR,* 48 Wis.2d 392, 180 N.W.2d 513 (1970). *Milwaukee County* points out that this provision is designed to promote automatic payment of benefits without litigation and that, when there is no justification for delay, penalty provisions are applicable. This provision may be triggered in the absence of bad faith. If the delay is inexcusable because of poor management or deficient administrative practices of the insurance company, the penalty payments would still be applicable in the absence of an acceptable excuse. Conduct which is inexcusable is nevertheless in most cases far short of bad faith, which involves intent to deny payments without a bona fide reason. Conversely, the penalty payments would not be applicable when there is a good-faith basis for not making payments. The inexcusable-delay provision of sec. 102.-22, Stats., does not contemplate that the intentional tort of bad faith can be expiated merely by payments augmented in the amount of 10 percent.

A statutory provision similar to sec. 102.22(1), Stats., was raised as a defense in *Anderson v. Continental Insurance Co., supra,* at 696. The defendants in *Anderson* argued that sec. 636.10, which provides for additional interest when an insurance claim is not promptly paid, precludes the possibility of punitive damages. Sec. 636.-10 states that a payment will not be deemed overdue

"when the insurer has reasonable proof to establish that the insurer is not responsible for the payment." Thus, the test for the application of the 12 percent penalty of sec. 636.10 is similar to the applicability of the 10 percent penalty provided in the Worker's Compensation Act and explained in *Milwaukee County v. DILHR, supra,* at 399. Sec. 636.10 was characterized in *Anderson, supra,* at 696, as merely an additional provision of the insurance contract incorporated into it by operation of law.

A penalty for delayed worker's compensation payments does not preclude a cause of action for the intentional tort of bad faith for failure to honor or pay the claim.

Moreover, sec. 102.22, Stats., would be applicable to an inexcusable delay in payment although no bad faith were shown. Both Alaska and the First Circuit Court of Appeals have reached similar conclusions. *Stafford v. Westchester, supra,* and *Martin v. Travelers Insurance Co., supra,* held that the statutory penalty for inexcusably late payment does not bar additional remedies for an intentional wrong going beyond the mere late payment. The court in *Stafford,* at 42, concluded that the statutory penalty is applicable to both the intentional and negligent failure to make compensation payments, but that, where the wrong is an intentional one, the penalty provided by the statutes is not the exclusive remedy. *Stafford,* at 43.

The defendants also raise as a separate issue the argument that exclusive subject-matter jurisdiction for Coleman's cause of action is with the Department of Industry, Labor and Human Relations. This argument must fail. The plaintiff's claim for intentional wrongdoing is not covered by ch. 102, Stats., and is not for compensation. The argument is merely another way of stating the exclusivity issue, and it must fall on the same rationale.

The plaintiff in this action is seeking recovery for emotional distress and other damages allegedly caused intentionally by the insurer and its agents independently of the original work-related injury. The action is not for benefits under the Compensation Act and is not barred by it.

The defendant American Universal Insurance Company also asserts that the inadequacies of the appellant's appendix require the assessment of double costs or, alternatively, the dismissal of the appeal without opinion. We decline to dismiss the appeal, and the imposition of double costs is appropriate only against a losing party. Currie and Heffernan, Wisconsin Appellate Practice Procedure, p. 21 (1975).

It is apparent, however, that the appellant's appendix is inadequate in that it abridges the pleadings of the parties and, for that reason, violates the rules. Sec. 251.-34(5) (b), Stats. Moreover, the trial court memorandum decision was not included in the appellant's appendix and no index to the appendix was provided. We cannot conclude, however, that the rules regarding the preparation of the brief and appendix have been flagrantly disregarded or that there has been evidence of bad faith in submitting the appeal.

In some cases where the prevailing party has failed to conform to the rules, costs have been denied. *McCrossen v. Nekoosa Edwards Paper Co., Inc.*, 59 Wis.2d 245, 267, 208 N.W.2d 148 (1973). In *McCrossen*, however, the appellant omitted material damaging to his position, whereas in the instant appeal the appellant instead appeared to have been overzealous in reducing the bulk of the materials to be submitted to the court and somewhat derelict in his duty to include in the appendix materials necessary to the proper consideration of the case. The

portions of the record which were omitted tended, however, to support, rather than to undermine, the appellant's position. Essentially, this appeal involved a review of the law, and although the omission of matters that should have been included in the appendix inconvenienced the court, the ability of the court to address the essential legal issue was not impaired. Accordingly, although we admonish appellant's counsel for failure to conform with the rules, we decline to deny costs on this appeal.

*By the Court.*—Judgments reversed and cause remanded.