492 A.2d 1280

James Henry **GALLAGHER** et ux.

v.

**BITUMINOUS FIRE AND MARINE INSURANCE COMPANY** et al.

No. 124, Sept. Term, 1984.

Court of Appeals of Maryland.

May 31, 1985.

Walter P. Drake, Ocean City, for appellants.

James D. Reed, Baltimore (Mark T. Hackman and Reed, Reed & Kelly, P.A., Baltimore, on the brief), for appellees.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

RODOWSKY, Judge.

This multiple-count, third-party action by a workers' compensation claimant against the compensation insurer arises out of the latter's alleged failure timely to pay certain temporary total disability benefits and medical bills. The trial court entered judgment for the insurer on demurrer on the ground that the compensation remedy was exclusive. As hereinafter explained, that holding was too broad. While none of the legal theories stated a cause of action as pleaded in the declaration, one of them, intentional infliction of emotional distress, is not legally precluded by the exclusivity of compensation.

The plaintiffs below and appellants here are James Henry Gallagher (James) and Mary C. Gallagher (Mary), who are husband and wife (the Gallaghers). James was employed as a carpenter by an employer who was insured for workers' compensation by Bituminous Fire and Marine Insurance Company (Bituminous). Paul M. Trimble (Trimble) was an adjuster for Bituminous. Trimble and Bituminous were named as defendants below and are appellees here. After the Gallaghers appealed to the Court of Special Appeals, we issued the writ of certiorari on our own motion prior to consideration of the case by that court, 301 Md. 697, 484 A.2d 640 (1984).

The declaration contains four counts in each of which the Gallaghers are plaintiffs. As indicated by the pleader's labels on the counts, they are intended to sound in negligence (I), "Tortious Delay in Payment" (III), intentional infliction of emotional distress (II), and "Consortium" (IV).

By its terms count IV limits the theory of liability underlying that claim to the negligence alleged in count I.

The declaration is lean on facts and larded with conclusions. The outline is that James, on July 20, 1983, while working as a carpenter fell and injured his back. This injury required the removal of a herniated disc on August 11, 1983. The first order of the Workmen's Compensation Commission (the Commission) was entered on September 20, 1983. That order directed Bituminous to pay temporary total disability benefits of $240 per week and promptly to provide medical treatment. It was not until a hearing on December 2, 1983, when the Commission "again ordered the payment of benefits that [James] ever received any of the benefits to which he was entitled by law."

The trial court recited in its order its belief "that Plaintiffs' sole and exclusive remedy is under the Workmen's Compensation law of Maryland...." Inasmuch as the trial court applied that defense to all of the counts, we shall first consider the exclusivity issue. It is governed by Md.Code (1957, 1979 Repl.Vol.), Art. 101 (the Act) which provides in § 15, in part, that

> [e]very employer subject to the provisions of this article, shall pay or provide as required herein compensation ... for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment....

> The liability prescribed by the last preceding paragraph shall be exclusive....

Although count I is labeled as a negligence claim, it is not the Gallaghers' theory that Bituminous intended to pay James but, through negligence, failed to do so. Count I alleges a duty by Bituminous "to pay medical and other benefits in a timely fashion," that Bituminous failed "to pay medical bills when presented" and that it "intentionally [cut] off benefits for temporary total disability without notice, contrary to law, and contrary to an order of the

[Commission]." The pleader denounces this conduct not only as "gross negligence of the highest magnitude," but also as demonstrating "actual and implied malice" and a "wanton and reckless disregard ... so as to be morally culpable [and] offensive to public policy...." The *ad damnum* seeks compensatory and punitive damages. Compensatory damages are to be based on the plaintiffs' having suffered "needless embarrassment, financial hardship, humiliation, pain and suffering, mental anguish and emotional distress" as well as "problems with their credit" and "interference with their credit reputation and standing in the community...." Stripped of its verbiage count I rests on an intentional failure to pay money allegedly due under the Act.

Count III incorporates by reference much of count I. The most significant difference is that count III asserts that the Defendants wilfully and maliciously withheld the payment of benefits in an effort to discourage [James] from proceeding and from securing the compensation payable under the [Act].

Accordingly, we shall consider these two counts together.

Some courts have held that benefits under a workers' compensation act and the procedures set forth in the statute for obtaining them constitute the exclusive remedy which precludes damages even for an intentional tort arising out of the nonpayment of benefits. *See, e.g., Escobedo v. American Employers Ins. Co.*, 547 F.2d 544 (10th Cir.1977) (New Mexico act); *Chavez v. Kennicott Copper Corp.*, 547 F.2d 541 (10th Cir.1977) (New Mexico act); *Sandoval v. Salt River Project Agricultural Improvement & Power Dist.*, 117 Ariz. 209, 571 P.2d 706 (Ct.App.1977); *Physicians and Surgeons Hospital, Inc. v. Leone*, 399 So.2d 806 (La. Ct.App.), *cert. denied*, 401 So.2d 993 (La.1981); *Dickson v. Mountain States Mut. Casualty Co.*, 98 N.M. 479, 650 P.2d 1 (1982); *Gonzales v. United States Fidelity & Guar. Co.*, 99 N.M. 432, 659 P.2d 318 (Ct.App.1983). In general these cases turn not so much on the breadth of the language of the exclusivity provision as on a conclusion that the policy

underlying the compensation act does not allow damages recoveries for torts, including intentional torts, in the claims-evaluation and benefit-paying process of the compensation system.

Other cases involving a claim for damages based upon an intentional tort arising out of a compensation carrier's failure to pay benefits have concluded that the tort action is outside of an exclusivity provision. These cases, which have arisen on legal challenges to the sufficiency of the complaint, hold that, while the compensation act is the exclusive remedy for the original work-related injury, the tort claim is separate from the work-related injury because the tort injury is different and did not arise during employment. *See, e.g., Hollman v. Liberty Mut. Ins. Co.,* 712 F.2d 1259 (8th Cir.1983) (South Dakota act); *Martin v. Travelers Ins. Co.,* 497 F.2d 329 (1st Cir.1974) (Longshoremen's and Harbor Workers' Compensation Act); *Reed v. Hartford Accident & Indem. Co.,* 367 F.Supp. 134 (E.D.Pa.1973); *Garvin v. Shewbart,* 442 So.2d 80 (Ala.1983); *Savio v. Travelers Ins. Co.,* 678 P.2d 549 (Colo.Ct.App.1983); *Gibson v. Nat'l Ben Franklin Ins. Co.,* 387 A.2d 220 (Me.1978); *Broaddus v. Ferndale Fastener Div.,* 84 Mich.App. 593, 269 N.W.2d 689 (1978); *Birkenbuel v. Montana State Compensation Ins. Fund,* —— Mont. ——, 687 P.2d 700 (1984); *Hayes v. Aetna Fire Underwriters,* 187 Mont. 148, 609 P.2d 257 (1980); *Coleman v. American Universal Ins. Co.,* 86 Wis.2d 615, 273 N.W.2d 220 (1979).

■ The analysis of these cases, and particularly that by the Supreme Court of Wisconsin in *Coleman,* is appropriate to the application of § 15 of the Act in a case like that before us. Section 15 makes compensation exclusive for "the disability ... resulting from an accidental personal injury sustained by an employee arising out of and in the course of his employment...." Here the work-related injury to James was a physical injury to his back, but the intentional tort injuries were nonphysical, at least in the sense that they are not said to disable either plaintiff. The

Gallaghers here seek damages only for economic conse-
quences and emotional upset caused by the failure to pay.
The alleged cause of James' back injury (an accident) is
separate from the alleged cause of the claimed tortious
injury (intentional failure to pay). The language of § 15
does not reach the Gallaghers' intentional tort claims.[1]

In order to bring the alleged tortious injuries sued on by
the Gallaghers within § 15, it would be necessary to rule
that the insurer enjoys an exclusivity defense for all activity
in the claims process, including intentional torts. As point-
ed out in *Coleman* this argument relies on an extended
"but for" rationale which that court rejected for the reasons
stated in 2A A. Larson, *The Law of Workmen's Compensa-
tion*, at 13–36 to –37 (1978):

> "It is true that but for the original injury the investiga-
> tion would never have been undertaken and the second
> injury would not have occurred. But must we go on to
> say that the carrier acquires complete tort immunity ever
> after for anything its agents do to carry out their investi-
> gation? Suppose the agent had decided to burglarize the
> claimant's house to get needed evidence. Suppose claim-
> ant died of fright on seeing the burglar. Is the compen-
> sation act the exclusive remedy, merely because the activ-
> ity involved, which was the collecting of evidence, was in
> the mainstream of the agent's duties?
>
> "Again, suppose a claimant has a compensable broken
> toe, and is being tailed by a photographer. Claimant sees

---

**1.** The facts of the instant case may be compared to those in *Young v.
Hartford Accident & Indem. Co.*, 303 Md. 182, 492 A.2d 1270 (1985). In
*Young* the tort suit against the insurer sought damages for an injury
which was an aggravation of the original, compensable injury, a dis-
abling, emotional one. We held that if the insurer's conduct was
merely negligent, compensation was the exclusive remedy. On the oth-
er hand, the facts alleged as constituting an intentional tort in *Young,* if
asserted against an employer, would have taken the same case out of
the protection of the Act, under § 44 thereof. We therefore held that a
case was stated against the insurer because that intentional tort, as
alleged, was not an "accidental" personal injury.

him in the bushes, a scuffle ensues, and claimant receives a skull fracture as a result of a blow from the camera. Is this skull fracture nothing but an aggravation of the broken toe?" [86 Wis.2d at 624, 273 N.W.2d at 223–24.] We agree with these views.

A variation on the exclusivity concept is recognized by some courts which rely on a statutory penalty for late payment of benefits. The Maryland version of a penalty provision is found in § 36(13) of the Act. It reads:

> If the Commission finds that any compensation payment awarded pursuant to this article has not been paid, through the fault of the insurer or self-insurer, by the thirty-first day after the order therefor was issued or the payment was due, whichever is later, the Commission shall assess against the insurer or self-insurer a fine not to exceed 20 percent of the amount of the payment, which fine shall be remitted to the claimant.

It has been held that the intentional delay of workers' compensation payments does not give rise to an independent, intentional tort action against the employer or the insurer where a penalty for such delay is provided by the Act. Some courts say the penalty excludes the employee's alternative use of common law remedies. *See, e.g., Bright v. Nimmo*, 253 Ga. 378, 320 S.E.2d 365 (1984) (15% penalty if "not paid within 14 days after becoming due" unless "owing to conditions beyond control of the employer"); *Robertson v. Travelers Ins. Co.*, 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983) (50% penalty for "unreasonable or vexatious delay").[2] The issue turns on legislative intent. This State's statute authorizes the Commission to impose the penalty if the failure to pay arises "through the fault of the insurer." The language selected by the Legislature is broad enough to permit imposition of the penalty if the

---

**2.** After *Coleman, supra,* Wisconsin amended its penalty provision to provide a 200% penalty for insurer bad faith. The penalty is expressly exclusive. *See Jadofsky v. Iowa Kemper Ins. Co.,* 120 Wis.2d 494, 355 N.W.2d 550 (Ct.App.1984).

fault is due to a high degree of carelessness or inefficiency on the part of the insurer. Authorization to impose the penalty is not limited to intentional nonpayment without reasonable justification. Thus § 36(13) of the Act is not focused on alleged intentional torts arising out of the failure timely to pay compensation. The penalty statute does not preclude otherwise permitted intentional tort actions.

For these reasons we conclude that the kind of injuries which the Gallaghers ascribe to intentional torts by the insurer do not arise out of and in the course of James' employment as those terms are used in the exclusivity portions of § 15. Consequently the trial court erred in sustaining the demurrer on exclusivity grounds alone. It does not follow, however, that a reversal is required. Even if the Gallaghers have cleared the hurdle of exclusivity, it remains to be seen whether they have stated a cause of action.

Counts I and III, described above, do not state any cause of action recognized in Maryland. Alleging that the nonpayment was intentional adds nothing. We accept that Bituminous made a deliberate decision not to pay and did not pay until the order of the Commission following the December 2, 1983, hearing. The Gallaghers' allegation that the failure to pay was in violation of the outstanding order of the Commission adds nothing by way of tort. The order described by the declaration is commonly called a "TT Order." If the insurer receives information indicating that temporary total disability has ended, it is not necessary for the insurer to obtain a separate termination date order from the Commission. *See* T. Cornblatt, H. Meredith & B. Sevel, *Workmen's Compensation* 42 (Maryland Institute for Continuing Professional Education of Lawyers 1981, 1984 Supp.). If there are issues between insurer and claimant over a termination or nonpayment of benefits, they may be resolved before the Commission.

The cause of action which the Gallaghers would have us recognize in their counts I and III treats the intentional

nonpayment of money due under the Act as if it were always a tort, with damages measured as in intentional tort actions. We will not judicially create such a cause of action. If the procedures before the Commission and the statutory penalty for failure to pay compensation do not adequately meet any existing problem, the creation of a tort of intentional nonpayment for the benefit of compensation claimants alone is for legislative consideration. Were we to hold that deliberate nonpayment of money due is, *per se,* a tort, the holding could not on any principled basis be limited to compensation claimants. Such a holding would mean that every creditor, after accepting late payment deliberately withheld (as when interest rates are rising), could sue the debtor for the emotional distress and annoyance involved in waiting for the delinquent payment.

Count II of the Gallaghers' declaration attempts to state a cognizable cause of action, *i.e.,* intentional infliction of emotional distress, but fails in the attempt. Assuming that count II adequately pleads conduct which is intentional and which is causally connected to emotional distress, the pleading falls woefully short of alleging conduct which is extreme and outrageous or of alleging emotional distress which is severe. We pointed out in *Harris v. Jones,* 281 Md. 560, 567, 380 A.2d 611, 614 (1977), by quoting Restatement (Second) of Torts, § 46, comment *d* (1965) that the conduct must "go beyond all possible bounds of decency, ... and [be] utterly intolerable in a civilized community." With respect to severity *Harris* quoted favorably a test laid down in *Fletcher v. Western Nat'l Life Ins. Co.,* 10 Cal. App.3d 376, 397, 89 Cal.Rptr. 78, 90 (1970) requiring " 'emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it.' " 281 Md. at 572, 380 A.2d at 617.

These are extremely high factual requirements. While it may be the rare case in which facts arising out of the nonpayment of workers' compensation benefits can

satisfy the elements of the tort, it is conceivable that the tort might be committed by means of withholding benefits. In order for a pleader to state a cause of action in this tort arising out of the nonpayment of compensation benefits, we shall require allegations of specific facts demonstrating the existence of the cause of action. In this respect we agree with the court in *Everfield v. State Compensation Ins. Fund,* 115 Cal.App.3d 15, 19–20, 171 Cal.Rptr. 164, 166 (1981) when it said:

> If every case in which there is a delay, a change of amount, or a disobedience to a subpoena could be brought into a court of law by an unhappy worker by merely alleging that the acts were intentional, deceptive, outrageous and fraudulent *without alleging the specific conduct and how it was carried out,* it would make shambles of the workers' compensation system now quickly and efficiently handled for the benefit of the injured workers by the Workers' Compensation Appeals Board.
>
> . . . .
>
> [A]ppellant's complaint does no more than allege a nonperformance of a statutory duty to provide temporary disability benefits under the Labor Code (§§ 4650 and 4651.) Such a complaint which does not contain factual allegations identifying the particular acts or circumstances which distinguish the tort of outrageous conduct from an ordinary nonperformance of a statutory duty owed by respondent to appellant is insufficient. [Citation omitted.]

There are good reasons for leaving the matter of workers' compensation payments in the exclusive control of the Workers' Compensation Appeals Board, including the matters raised here by appellant. No exhaustive cataloging or extensive discussion of these reasons is here necessary. It is enough to recognize that the present system of the workers' compensation law provides a quick, simple and readily accessible method of claiming and receiving compensation. It eliminates the need for an action

under common law. It thus avoids: the proof and defenses incident thereto, the intolerable delay in resolution of a lawsuit, economic waste to all and expense to the worker. [Emphasis added.]

And *see Hixon v. State Compensation Fund,* 115 Ariz. 392, 565 P.2d 898 (Ct.App.1977).

Inasmuch as the trial court's application of the exclusivity defense prevented any consideration of further amendment, we will remand without affirmance or reversal under Rule 871 in order to allow the Gallaghers an opportunity to amend count II of their declaration. If an amended declaration is not filed within thirty days from the mandate in this case, the trial court shall enter judgment for the defendants on count II. The judgment is affirmed in favor of the defendants on count I, on count IV which by its terms rises or falls with count I, and on count III.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART. THREE–FOURTHS OF THE COSTS TO BE PAID BY THE APPELLANTS. ONE–FOURTH OF THE COSTS TO ABIDE THE RESULT.