494 A.2d 748

**James D. STERRY, et ux.**

v.

**BETHLEHEM STEEL CORPORATION.**

**No. 1479, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

July 9, 1985.

Certiorari Granted Oct. 24, 1985.

176

R. Bruce McElhone, Lutherville (Peter G. Angelos, Lutherville, on brief), for appellants.

Rudolph L. Rose, Baltimore (Thomas E. Cinnamond, Richard M. Barnes, Donald R. DeLorenz and Semmes, Bowen & Semmes, Baltimore, on brief), for appellee.

Argued before WILNER, BLOOM and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

James D. Sterry, appellant,[1] has appealed from the judgment of the Circuit Court for Baltimore County granting appellee's, Bethlehem Steel Corporation, motion for summary judgment, as to appellant's amended declaration.[2] The first count of the amended declaration alleged that appellee, through its medical director and another physician employee, intentionally caused appellant to become addicted to painkilling drugs, and, by means of a program to "narcotize" appellant in conjunction with its intentional failure to treat and otherwise disclose appellant's disc pathology, caused appellant to become totally and permanently disabled physically. In the second count, appellant alleged that appellee practiced a fraud, and inflicted intentional injury, upon appellant to conceal his physical injuries from him and to serve the corporate goal of appellee.[3] Counts six and seven alleged loss of consortium.

---

1. Appellant's wife, the plaintiff as to Counts Six and Seven of the Amended Declaration, is also an appellant. For the sake of simplicity, we will refer only to Mr. Sterry in this opinion.

2. Appellant's initial declaration was filed on May 6, 1982. Subsequent to appellee's filing of a motion for summary judgment, appellant amended that declaration, rendering a ruling on that motion moot. The motion which forms the basis for this appeal is appellee's second motion for summary judgment.

3. One of the goals alleged was the avoidance of supplemental awards to appellant by the Maryland Workmen's Compensation Commission. See Md.Code Ann. Art. 101 § 40(d).

On September 4, 1970, appellant was injured when he was struck by an industrial machine during the course of his employment. As a result, he was hospitalized until September 15, 1970. Upon his return to work, appellant received treatment at appellee's dispensary under the care of Dr. Leopold Salazar, appellee's medical director, and Dr. John E. Carroll. He was treated for muscle spasms, headaches, neuralgia, numbness, pain and stiffness in the limbs, and diminution of movement, all of which were attributable to the accidental injury of September 4, 1970. Pursuant to a claim for workmen's compensation benefits filed on August 2, 1971, appellant received benefits for temporary total disability and, on March 30, 1972, for permanent partial disability.

Appellant returned to work as a millwright in December, 1970 and worked until September, 1979. Prior to his return, and continuing until June, 1979, Dr. Salazar regularly and consistently prescribed drugs for appellant's pain. During this same period, Dr. Salazar, in response to appellant's complaints concerning his symptoms, advised appellant that time was necessary to the healing process and that working was beneficial to that process. As the severity of his condition worsened and the pain increased, the drug dosages were correspondingly increased. Although, from time to time between 1971 and 1973, appellant received physical therapy and heat and cervical traction at the direction of Dr. Salazar, the primary treatment modality utilized with respect to appellant was the administration of the drugs.

Despite the increasing amounts of drugs prescribed or supplied by Dr. Salazar, appellant continued to experience pain. Consequently, in February, 1978, he was referred to a neurosurgeon, who reported to Dr. Salazar that appellant was "suspect of being habituated to Darvon or Darvocet N at this time." Notwithstanding this report, and without advising appellant of its contents, Dr. Salazar continued to prescribe or supply Darvon to appellant. In August, 1978, following an unsuccessful effort to obtain a prescription for

Darvocet from a private physician, appellant was referred to Dr. Aronson for neurological evaluation and consultation. After a consultation in October, 1978, Dr. Aronson communicated appellant's dependence on Darvocet to Dr. Salazar and also informed him of x-ray evidence indicating cervical and lumbar pathology. His findings, with the recommendation that appellant undergo surgery, were again reported to Dr. Salazar in March, 1979. Nevertheless, Dr. Salazar prescribed increased amounts of Darvocet for appellant until May 24, 1979, when pharmacies refused to refill the prescriptions.

Dr. Salazar did arrange for appellant to enter a drug detoxification program. Appellant entered the program at Maryland General Hospital on May 26, 1979 and, until June 8, 1979, when he was discharged, was treated with methodone and other drugs. His orthopedic and neurological status was also evaluated. Detoxification failed; appellant was discharged with a prescription for 100 Darvocet N–100.[4] At the time of his discharge, appellant learned of his drug addiction for the first time.

On June 13, 1979, Dr. Salazar informed appellant of Dr. Aronson's findings. Noting his disagreement with those findings and recommending that appellant continue under his care and, return to work, Dr. Salazar offered to continue to supply appellant with eight Darvocet tablets per day to control his pain. Appellant "elected to place himself in the care of Dr. Aronson", as a result of which he was placed in a second drug detoxification program as a precondition of surgery.

On September 11, 1979, the results of appellant's myelogram revealed "evidence of gross pathology of ruptured discs at C5–6 and C6–7 and defects at C4–5 and L4–5." Subsequently, Dr. Aronson performed lumbar surgery and conducted exploration of the cervical spine. Although

---

4. His final diagnosis was "Darvocet dependence" and "probable lumbosacral disc disease".

treatment to control or reduce appellant's drug dependence is continuing, to date it has been unsuccessful. In 1980, appellant retired from Bethlehem Steel and is now totally disabled to pursue his occupation as a millwright.

On this appeal, appellant raises but one question: Has an employee made an election to receive workmen's compensation benefits for injuries alleged to have resulted from intentional acts of fraud and medical malpractice by his employer and his employer's doctors in treating a workplace injury, where the employee has filed a workmen's compensation claim and received workmen's compensation benefits for the workplace injury prior to his discovery of the fraud alleged and the nature of the medical malpractice alleged? Appellant submits that the answer should be, "no". He arrives at that conclusion on the basis of three related, yet different, arguments. The first argument proceeds: an employee cannot make an election of remedies under the Workmen's Compensation Act until he is aware of the fraud alleged that gives rise to a cause of action. Because he did not, and reasonably could not have, become aware of his cause of action for appellee's intentional torts until June, 1979, in 1970, he could only have proceeded under the Workmen's Compensation Act. His right to elect remedies pursuant to Md.Code Ann. Art. 101, § 44,[5] therefore, did not accrue until he became aware that "proper diagnostic procedures and medical treatment were being withheld from him ... and that for many years prior to [June 13, 1979, he] had been addicted to the drugs prescribed or dispensed to him". It was then, that he had the right to elect, as he did, to bring a common law action pursuant to § 44 or to proceed

---

5. Section 44 provides:

   If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child, children or dependents of the employee shall have the privilege either to take under this article or have cause of action against such employer, as if this article had not been passed.

under Md.Code Ann. Art. 101 § 40(d).[6]  For these reasons, he urges that the circuit court erred in granting appellee's motion for summary judgment.

Appellant's next argument is that the injuries sued upon in the instant case are not the injuries resulting from the workplace accident of September 4, 1970.  Acknowledging his receipt of workmen's compensation benefits for that accident, appellant now contends that appellee's subsequent intentional medical maltreatment caused the injury, for which he had received no compensation, sued upon in this action.  Those injuries are alleged to be the aggravation of appellant's back and neck condition and his drug addiction.

Finally, appellant argues that appellee's intentional conduct is a superceding cause of his injuries.  He submits that his allegations that appellee engaged in intentional conduct to his detriment "served to break the chain of causation between the accident of September 4, 1970 and the injuries from which [appellant] suffered through the decade of the 1970's".  Because "the question of motive, intent or knowledge being one distinctly for jury determination," it was inappropriate for the circuit court to grant summary judgment.

Appellee, on the other hand, argues that appellant, when he filed for and received workmen's compensation benefits, elected his remedy for all injuries arising out of his September 4, 1970 accidental injury.  Relying upon the legislative intent of the Workmen's Compensation Act and public policy, appellee urges that that Act provides the exclusive remedy for aggravation of injuries resulting from a work-

---

6.  Section 40(d) provides:
   (d) *Filing after fraud or estoppel.*—When it shall be established that failure to file an application for change or modification was induced or occasioned by fraud, or by facts and circumstances amounting to an estoppel, application for change or modification shall be filed within one year from the time of the discovery of the fraud or within one year from the time when the facts and circumstances amounting to an estoppel cease to operate and not afterwards.  (1957, ch. 814; 1969, ch. 116.)

related accident even if the aggravation was caused by the medical maltreatment of doctors employed by appellee. Contrary to appellant's assertion that § 44 is controlling, appellee contends that § 40(d) is the applicable section. Finally, appellee argues that once an employee elects to file a workmen's compensation claim, subsequent changes in his condition, caused by medical misconduct, relate back to the initial compensable injury. Appellee places little emphasis on appellant's allegations that appellee's conduct was intentional.

Other than the exceptions created by the act itself, the Workmen's Compensation Act provides the exclusive remedy and liability, with respect to all injuries arising out of and in the course of the employment, as to both employers and employees who come within its purview. *Knoche v. Cox,* 282 Md. 447, 385 A.2d 1179 (1978), *St. Paul Fire & Marine Insurance v. Treadwell,* 263 Md. 430, 283 A.2d 601 (1971), *Wood v. Aetna Casualty and Surety Co.,* 260 Md. 651, 273 A.2d 125 (1971), *Athas v. Hill,* 54 Md.App. 293, 458 A.2d 859, aff'd 300 Md. 133, 476 A.2d 710 (1984). As such, this comprehensive and exclusive system replaces prior common law causes of action against employers for injuries to employees. *Bethlehem-Sparrows Point Shipyard, Inc. v. Damasiewicz,* 187 Md. 474, 50 A.2d 799 (1947). "[T]he statute has given to labor what it never had before, and has taken from capital what it had always enjoyed, and has compensated the latter by limiting its liability, ... to the payment of compensation only to those who sustain an injury arising out of and in the course of their employment, that is compensable under the Act." *Victory Sparkler Company v. Francks,* 147 Md. 368, 128 A.2d 635 (1925). Thus the Workmen's Compensation Act extends to all accidental injuries arising out of and in the course of employment. Md.Code Ann. Art. 101 § 15,[7] *Reiger v. Washington*

---

7. In relevant part, § 15 provides:
   Every employer subject to the provisions of this article, shall pay or provide as required herein compensation ... for the disability or

*Suburban Sanitary Commission,* 211 Md. 214, 126 A.2d 598 (1956), *Whiting-Turner Contracting Co. v. McLaughlin,* 11 Md.App. 360, 274 A.2d 390 (1971). The exclusivity provision of § 15, conversely, does not apply to injuries caused by an occurrence or event which is neither an accident nor arises out of or in the course of employment, *Gallagher v. Bituminous Fire and Mar. Ins. Co. et al,* 303 Md. 201, 492 A.2d 1280 (1985) or, if an original accidental injury arising out of or in the course of employment is aggravated by conduct of the employer, to injuries caused by the intentional acts of such employer. *Young v. Hartford Accident and Indem. Co.,* 303 Md. 182, 492 A.2d 1270 (1985).

■ *Gallagher* and *Young* are dispositive of the issue raised on this appeal. In *Gallagher,* the plaintiff alleged, in two counts of his declaration, "an intentional failure to pay money allegedly due under the Act" and willful and malicious withholding of payment of benefits "in an effort to discourage [James] from proceeding and from securing the compensation payable under the [Act]". Before ultimately holding that these counts failed to state a cause of action recognized in Maryland, the Court rejected the defendant's exclusivity argument based upon § 15: (303 Md. at p. 207, 492 A.2d 1280)

> Here the work-related injury to James was a physical injury to his back, but the intentional tort injuries were nonphysical, at least in the sense that they are not said to disable either plaintiff. The Gallaghers here seeks damages only for economic consequences and emotional upset caused by the failure to pay. The alleged cause of James' back injury (an accident) is separate from the alleged cause of the claimed tortious injury (intentional

---

death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment....

The liability prescribed by the last preceding paragraph shall be exclusive....

failure to pay). The language of § 15 does not reach the Gallaghers' intentional tort claims. (footnote omitted) The Court concluded that the injuries claimed to have been caused by the defendant's intentional torts did not arise out of and in the course of employment as those terms are used in § 15. In so doing, the Court rejected the defendant's "extended 'but for' rationale", the application of which would give the exclusivity provisions of the Act too broad a reach.[8]

In *Young*, the Court considered the applicability of the exclusivity argument to a suit against the employer's insurer for injuries which were an aggravation of an initial, compensable injury. Plaintiff's action proceeded on two theories: negligence and intentional infliction of emotional distress. Her declaration alleged that she was assaulted at work, as a result of which she sustained physical and emotional trauma, that the insurer psychiatrist's examination of her caused her to attempt to commit suicide, and that her action was brought to recover for the injuries sustained as a result of that attempt.

The insurer having interposed, as a defense, the exclusivity provisions of the Compensation Act, the Court first considered if the plaintiff's injuries were sufficiently work-related to be covered by that Act. It concluded that there was "a causal nexus between the assault at work and the injuries suffered in the suicide attempt with the result that the later injuries arise out of and in the course of Young's employment". *Id.*, 303 Md. at p. 192, 492 A.2d 1270. For this conclusion, the Court relied upon the plaintiff's allegations that the assault at work resulted in emotional trauma, that following that incident, plaintiff sought authorization to obtain treatment for emotional illness, that she obtained

---

**8.** It is true that the discussion regarding the "extended 'but for' rationale" was in the context of the injuries based upon intentional torts arising out of a compensation carrier's failure to pay Workmen's Compensation benefits, however, the analysis is persuasive in other contexts as well.

her own psychiatrist, and that when she submitted the bills rendered by her psychiatrist to the insurer, the insurer failed to pay them. These allegations were found to "in effect say that Young's emotional disability is covered by the Act". *Id.*, at p. 193, 492 A.2d 1270.

Other allegations—plaintiff's psychiatrist's warning that suicide was a possible consequence of a re-evaluation of plaintiff by defendant and plaintiff's averment that her attempted suicide resulted from defendant's examination— were found to have provided the link between the work-related injury and the injury sued upon. The suicide attempt was then said to be an irrational reaction to the psychiatric examination and, because it was undergirded by the alleged emotional trauma emanating from the work-related assault, the injuries relating thereto were an aggravation of that work-related injury. To the extent that the conduct of the insurer was alleged to be negligent, the Court found the exclusivity defense to be meritorious.

The Court next considered the plaintiff's claim for intentional infliction of emotional distress. Its first inquiry was whether the cause of action was well pleaded. Noting that the plaintiff alleged that "the sole purpose of Dr. Henderson's examination was to harass the Plaintiff into abandoning her claim, or into committing suicide, which escalates the level of intentional conduct",[9] the Court found that the plaintiff had stated a case of intentional infliction of emotional distress. Then, relying on § 44 of the Act, the insurer's exclusivity argument was rejected, the Court borrowing as the limit "on the application of exclusivity as to an insurer ... the same limit expressly established in § 44 on the scope of exclusivity as a defense for employers inflicting the same injury." In that regard it said:

If Hartford is correct and the Act gives unlimited scope to the exclusivity defense insofar as insurers are con-

---

9. It was recognized that the act of examining the plaintiff after a warning of the danger involved was "intentional conduct", but on a different level from that involved in seeking to obtain a desired result.

cerned, then the Act creates greater protection for insurers than employers because *employers may be liable in tort for work-related injuries produced by their deliberate intention,* but insurers would not be liable in tort for similarly produced injuries beyond workers' compensation benefits. This is a disparity of treatment which the General Assembly could not have intended. (emphasis added)

*Id.,* at p. 201, 492 A.2d 1270.

In the case *sub judice,* appellant has alleged a prior work-related back and neck injury, treatment of that injury by appellee's doctors, his development of drug addiction as a result of drugs supplied or prescribed by those doctors, and a worsening of those injuries. The effect of these allegations is to make clear that the alleged injuries allegedly resulting from the conduct of appellee's doctors are covered by the Act. Under appellant's pleadings, these injuries are merely an aggravation of appellant's work-related injuries and, as such, ordinarily are covered exclusively by the Compensation Act. *Young, supra, Great Atlantic and Pacific Tea Company v. Hill,* 201 Md. 630, 95 A.2d 84 (1953), *Unger and Mahon, Inc. v. Lidston,* 177 Md. 265, 9 A.2d 604 (1939), *Nazario v. Washington Adv. Hospital, Inc.,* 45 Md.App. 243, 412 A.2d 1271 (1980), *Williams Construction Company v. Garrison,* 42 Md.App. 340, 400 A.2d 22 (1979), 1 A. Larson, Law Workmen's Compensation Section 13.21 (1985). We proceed to consider whether under the facts alleged, appellant's exclusive remedy is the Compensation Act.

*Young* teaches that "[w]here an employer intentionally inflicts work-related injury on the employee, the employee may hold the employer liable for tort damages as provided in § 44 of the Act." Although, as we have seen, the injuries sued upon are an aggravation of the initial work-related accidental injury, appellant has alleged that they were caused by the intentional acts of appellee and further that these intentional acts caused his total and permanent physical disability. These allegations, "[a]t a minimum ... [do]

not allege an "accidental" injury". *Young,* 303 Md. at p. 200, 492 A.2d 1270, slip opinion. *See Gallagher, supra.* And, if sufficient to state a claim for the deliberate intention of appellee to produce the injury, at his option, appellant may bring a common law action against appellee or take under the Compensation Act.

The function of a motion for summary judgment is to allow for the determination of whether there is an issue of fact to be tried, and, if none, to cause judgment to be rendered summarily. *Washington Homes v. Interstate Land Development Company, Inc.,* 281 Md. 712, 382 A.2d 555 (1978). It is not a substitute for trial or a vehicle to decide disputed facts. *Coffey v. Derby Steel Company, Inc.,* 291 Md. 241, 434 A.2d 564 (1981), *Berkey v. Delia,* 287 Md. 302, 413 A.2d 170 (1980), *Porter v. General Boiler Casing Company,* 284 Md. 402, 396 A.2d 1090 (1979), *Horst v. Kraft,* 247 Md. 455, 231 A.2d 674 (1967), *Fireman's Fund Insurance Company v. Rairigh,* 59 Md.App. 305, 475 A.2d 509 (1984). Even when the facts are not in dispute, but more than one inference can be drawn from those facts, such inferences being resolved against the moving party, summary judgment is inappropriate. *Honaker v. W.C. & A.N. Miller Development Company,* 285 Md. 216, 401 A.2d 1013 (1979), *Fenwick Motor Company v. Fenwick,* 258 Md. 134, 265 A.2d 256 (1970). The determination of motive, intent, or knowledge is for the jury and not to be resolved on summary judgment. *DiGrazia v. County Executive for Montgomery County,* 288 Md. 437, 418 A.2d 1191 (1980).

We conclude that appellant's allegations respecting appellee's alleged intentional conduct are sufficient to create a jury question. *Young, supra, Gallagher, supra.*

Appellant must of course still prove that appellee supplied and prescribed painkilling drugs, to and for him, intending to addict him to such drugs, that appellee intentionally embarked upon a program to narcotize appellant, that appellee intentionally failed to disclose information concerning appellant's "disc pathology" or to treat it, and

that these acts caused his injuries. If he does, a jury could find that appellee deliberately intended to produce such injuries. *Young, supra.* Summary judgment should not have been granted.

■ Appellee argues that, by filing for and receiving workmen's compensation benefits, appellant elected the Compensation Act as his exclusive remedy. We do not agree. Although *Young* does not directly address this issue; it is implicit in *Young* that an election of remedies pursuant to § 44 cannot be made until the cause of action against the employer accrues. Such a cause of action accrues when the intentional acts are known, or reasonably should have been known to the appellant. *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981).

■ It also follows from our discussion above that § 44, not § 40(d), controls the case *sub judice.* Once it has been determined that the Compensation Act does not provide the exclusive remedy for the injuries sued upon, it becomes clear that § 40(d), even when fraud is alleged, has no applicability. That section, by its terms, applies only to those cases as to which the Commission has previously entered orders, which then become subject to change or modification by the Commission. *See Stevenson v. Hill,* 170 Md. 676, 185 A. 501 (1936) and *Union Mining Company v. Del Signora,* 191 Md. 55, 59 A.2d 771 (1948).

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.

WILNER, Judge, dissenting.

I dissent. I do not believe that the recent decisions of the Court of Appeals in *Young v. Hartford Accident and Indem. Co.,* 303 Md. 182, 492 A.2d 1270 (1984) and *Gallagher v. Bituminous Fire and Mar. Ins. Co., et al.,* 303 Md. 201, 492 A.2d 1280 (1985) require the result reached by the panel majority in this case; nor do I believe that it is a wise

result, or one in keeping with the purpose of the Workers' Compensation law.

Appellant[1] has alleged, in essence, the following. On September 4, 1970, he suffered an accidental injury to his back arising out of and in the course of his employment. He made claim for workers' compensation and received awards for temporary total and for permanent partial disability. Pursuant to its obligation under Md.Code, art. 101, § 37(a) and the initial award of the Commission,[2] Bethlehem provided continuing medical treatment to appellant for his work-related back injury.

That treatment consisted primarily of narcotic drugs designed to relieve appellant's constant pain, and it eventually led to appellant's becoming addicted to one or more of the medications. Appellant makes two basic complaints with respect to this treatment: (1) it was inappropriate and omitted other medical and surgical procedures that, in 1978 and 1979 were suggested by another physician consulted by appellant, and (2) it was intentionally designed to enable appellant to continue working and thus to preclude his seeking additional workers' compensation benefits. Insistence upon this inappropriate treatment and failure to provide proper treatment resulted not only in the addiction but a worsening of the initial back problem, all to the point that appellant is now permanently and totally disabled.

Effectively, appellant has charged Bethlehem, through its physicians, with medical malpractice, pure and simple. Had

---

**1.** For the sake of convenience, I shall use the singular "appellant" to refer to Mr. Sterry, recognizing that his wife joined in the action and is also an appellant.

**2.** Section 37(a) provides, in relevant part, that "[i]n addition to the compensation provided for herein the employer shall promptly provide for an injured employee, for such period as the nature of the injury may require, such medical ... treatment ... as may be required by the Commission...." In the initial award of temporary total disability entered August 30, 1971, Bethlehem was directed to "[p]romptly provide for said claimant such medical treatment and other necessary medical services as provided by [§ 37]."

he used the word "negligent" in describing what occurred, his right to pursue this action would clearly have been barred. *Nazario v. Washington Adv. Hosp.*, 45 Md.App. 243, 246, 412 A.2d 1271 (1980); *Young v. Hartford Accident and Indemnity Company, supra,* 303 Md. at p. 192, 492 A.2d 1270. Professor Larson notes (1 Larson's Workmen's Compensation Law, § 13.21):

"It is now uniformly held that aggravation of the primary injury by medical or surgical treatment is compensable. Examples include exacerbation of the claimant's condition, or death, resulting from ... pain killers.... Fault on the part of the physician, such as faulty diagnosis, improper administration of anesthesia, or a slip of the surgeon's knife, even if it might amount to actionable tortiousness, does not break the chain of causation. Indeed, in some of the cases in the present category, the compensability of the aggravation due to treatment is adduced to support holdings that the employer or physician cannot be sued in tort because of the exclusiveness of the compensation remedy."

This rule, as Larson observes later in § 13.21, has been applied even to the point that "[s]everal cases have held that, where drugs used in the treatment of a compensable injury led to narcotics addiction or alcoholism, the ensuing consequences were compensable." See cases cited in footnote 92 to § 13.21.

The relevant point is that the second injury, stemming from the treatment, is regarded as causally related to the initial injury for which the treatment was provided. It is for that reason that the second injury is not only considered compensable but that compensation benefits are held to be the exclusive remedy.

Appellant seeks to escape this "universally held" principle (*Nazario, supra,* 45 Md.App. at 246, 412 A.2d 1271 by eschewing the word "negligent" and averring instead that Bethlehem's malpractice was "intentional." It was done, he says, "solely in order to narcotize Plaintiff's pain and other

symptoms so that Plaintiff would perform and function in his duties as a millwright," or, in another part of his amended declaration, "to cause and induce Plaintiff to perform and function in his work duties as a millwright in spite of a progressively deteriorating, multiple disc pathology and to deprive Plaintiff of his entitlements and benefits under the Workmen's Compensation Law...."

Section 44 of art. 101, upon which appellant's action is based, provides, in relevant part, that "[i]f injury ... results to a workman *from the deliberate intention of his employer to produce such injury* ... the employee ... shall have the privilege either to take under this article or have cause of action against such employer, as if this article had not been passed." (Emphasis added). One must look carefully at the wording of this statute. To escape the bar of exclusivity provided by § 15 of art. 101, a plaintiff must allege and show more than merely an intentional act, more even than that his claimed injury resulted from an intentional act. The plaintiff must allege and prove that the employer's act (or omission) was deliberately intended to produce the particular injury that, in fact, occurred. It is a precise and direct nexus that is required. That is what the words "such injury" means to me.

In *Young,* the plaintiff was assaulted while at work, and, as a result suffered both physical and emotional trauma. She became deeply in need of psychotherapy, which the employer's compensation insurer refused to pay for (though ordered to do so by the Commission) unless she underwent an evaluation by the insurer's physician. The company was warned that the plaintiff would likely attempt suicide if forced to undergo the evaluation; it nevertheless insisted, and the plaintiff, as predicted, made such an attempt. She sued the insurer for negligence in insisting upon the examination (Count I) and for intentional infliction of emotional distress (Count II).

The Court rejected Count I as being within the exclusive purview of the Worker's Compensation Act. The allega-

tions, it said (303 Md. at p. 193, 492 A.2d 1270), "set forth an unbroken chain of proximate causation which continues from the emotional trauma suffered in the assault arising out of and in the course of Young's employment on to and through the attempted suicide. Under Young's pleading the injuries suffered in the suicide attempt are an aggravation of the work-related injury."

Count II stood on a different basis. There, she alleged not only an awareness by the insurer that a further examination would cause the plaintiff emotional distress, but that "the sole purpose of Doctor Henderson's examination was to harass the Plaintiff into abandoning her claim, or into committing suicide." That, the Court held, "escalates the level of intentional conduct" sufficiently to state a case of intentional infliction of emotional distress. The injury sued upon—the emotional distress—was, in other words, the very injury intended to be caused by the insurer. It was not the mere by-product of some other intentional act.

Therein, I think, lies the distinction. There is, buried within the eleven pages of Count I of appellant's amended declaration, a very general averment that "all" of the "wanton, willful and intentional acts and omissions" of Bethlehem and its doctors were "committed with knowledge of the substantial certainty that the drug addiction and the other permanently debilitating injuries complained of herein would result in total drug dependency and permanent and total physical disablement and with the intent to inflict these injuries upon Plaintiff." In contrast, the more specific allegations, repeated at least twice in Count I, are to the effect that the intent was not so much to turn appellant into a drug addict or to cause him to become disabled, but rather to keep him at work. That, indeed, seems to be the real thrust of his complaint. To the extent of any conflict or ambiguity in the matter, it must, as the *Young* Court observed, (p. 192, 492 A.2d 1270) be resolved against the pleader.

We are left, then, with this. In the discharge of its duties under § 37(a), Bethlehem, through its agents, allegedly prescribed a wholly inappropriate course of treatment, intending thereby to keep appellant working. As a result of this intentional course of action, appellant suffered an aggravation of his work-related injury and also became a drug addict. Both injuries, in my judgment, are compensable, and exclusively so, under art. 101. I would therefore affirm the judgment entered below.