718 P.2d 193

Walter L. FRANKS and Edwina Franks, husband and wife, Plaintiffs-Appellants,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, a foreign corporation, Defendant-Appellee.

No. 1 CA–CIV 7012.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 19, 1985.

Thur, Dawson & O'Sullivan by Steven C. Dawson, Calvin C. Thur, Scottsdale, for plaintiffs-appellants.

Jennings, Kepner & Haug by Craig R. Kepner, Julia C. Attwood, Phoenix, for defendant-appellee.

## OPINION

GRANT, Judge.

The plaintiffs-appellants, Walter and Edwina Franks (Franks), filed a complaint for breach of duty of good faith and fair dealing against the defendant-appellee, United States Fidelity & Guaranty Company (USF & G). USF & G filed a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim on which relief could be granted. The trial court granted the motion to dismiss based upon *Sandoval v. Salt River Project Agricultural Improvement & Power District*, 117 Ariz. 209, 571 P.2d 706 (App.1977). This appeal presents two issues: whether the Arizona superior courts have jurisdiction over and whether there is a cause of action for an injured worker's claim for damages based upon alleged bad faith administration of a worker's claim for benefits by his employer's insurance carrier.

## FACTS

Walter Franks was injured on June 19, 1979, while working for Delta Electric, Inc. He qualified for benefits under Arizona's workers' compensation laws. The insurance carrier that was to provide the coverage, USF & G, accepted Franks's claim for benefits.

Franks alleged the following facts in his complaint: The original diagnosis by an orthopedic specialist in June, 1979, was a low back injury in the spinal area. After Franks had undergone conservative medical treatment for about two months he started to have radiation of pain from his back into both legs. On August 13, 1979, he was hospitalized for 18 days. A lumbar myelogram showed evidence of a disc lesion at L–4 and L–5 of the spine.

On April 15, 1980, USF & G had Franks examined by its doctor. On April 23, 1980, USF & G issued a notice of claim status terminating Franks's compensation and medical benefits retroactively to April 15, 1980, and stating that Franks was in partial temporary disability status as of April 16, 1980.

After a pre-hearing conference USF & G changed its position to claim that Franks had been discharged without permanent disability. On June 4, 1980, USF & G terminated compensation and medical benefits retroactively to April 15, 1980. After a hearing in July, 1980, the administrative law judge issued a decision on September 29, 1980, finding that Franks's condition was not stationary and that he was entitled to further medical treatment and compensation benefits as provided by the workers' compensation laws.

On October 7, 1980, the insurer gave notice that it wanted another medical examination of Franks by its doctor on October 14, 1980. On October 21, 1980, USF & G issued another notice of claim status stopping compensation and medical benefits as of October 14, 1980, and closed the case without permanent disability. Franks protested the notice and filed a timely request for a hearing. The October 21, 1980, notice stated that compensation was being withheld for the period from April 15, 1980, through October 13, 1980, pending receipt of a report indicating Franks's earnings. Franks gave USF & G a report of earnings in November, 1980, but USF & G failed to pay benefits for the April 15 through October 13, 1980 period.

On March 25 and April 14, 1981, hearings were held on the October 14, 1980, termination of benefits. On June 25, 1981, the administrative law judge once again ruled that the condition was not stationary and that Franks was entitled to continued medical treatment and to disability benefits.

In the June 25, 1981 Decision Upon Hearing and Findings and Award for Continuing Benefits the administrative law judge found as follows:

The evidence shows that the defendant insurance carrier *has not acted in good faith* in this matter by allowing the previous award of September 29, 1980 to become final, but refusing to authorize any further treatment of the applicant by Dr. Bisla as ordered therein; it is apparently the defendant insurance carrier's position that it has an absolute right to an independent medical examination pursuant to *A.R.S.* § 23–1026 and can thereby frustrate the final decisions of the Industrial Commission; ... by thus scheduling a medical examination everytime further medical treatment is ordered for the applicant, the insurance carrier can completely deny to the applicant the benefits to which he is entitled; accordingly, it is hereby ordered that the defendant insurance carrier authorize and provide for the medical treatment as recommended by Dr. Bisla for a period of no less than 90 days from the date this Award becomes final. [Emphasis added.]

Shortly after the 90 days of uninterrupted treatment ordered by the administrative law judge had expired, USF & G again scheduled Franks for a medical examination on October 28, 1981. On November 5, 1981, USF & G again issued a notice of claim status terminating temporary compensation and active treatment retroactive to October 28, 1981 "because claimant was discharged" and claiming that "injury resulted in no permanent disability." Franks again protested USF & G's notice and requested a hearing.

On December 2, 1981, Franks had surgery by his treating physician who found and removed a herniated disk in his low back. Franks applied to the Industrial Commission in January, 1981, for special relief under A.R.S. § 23–1061(J). The Industrial Commission refused to allow proceedings under that statute and stated that the matter would be handled in a "routine manner." Hearings were held regarding USF & G's November 5, 1981, notice of claim status and the administrative law judge rendered a decision, findings and award on July 19, 1982, awarding compensation benefits and medical/surgical benefits for the period from March 25, 1981 until the condition became stationary.

Franks's complaint filed in superior court essentially alleged that USF & G acted intentionally, willfully and wantonly in:

(1) failing to make adequate disability compensation payments and in delaying payment of disability compensation benefits; and

(2) terminating or denying a claim for compensation and medical benefits without adequate information.

Franks requested damages for loss of use of compensation and medical benefits, damages for mental and emotional distress, and for punitive damages.

On appeal from the dismissal of their complaint, Franks presents the following arguments:

(1) The complaint states a claim for relief as to USF & G's bad faith which is a tort claim over which the superior court has jurisdiction;

(2) When a workers' compensation insurer acts in bad faith in settlement or payment of compensation benefits, a separate tort is committed that is not within the purview of the exclusivity provisions of the Workers' Compensation Act and a separate tort of bad faith may be alleged and proved in court;

(3) The *Sandoval* decision is not controlling authority for the case at bar;

(4) Administrative bodies have no jurisdiction over tort claims for damages;

(5) Franks's right to sue for tort damages is constitutionally guaranteed;

(6) The right of a workers' compensation beneficiary to bring a claim for bad faith is particularly important in Arizona because Arizona's administrative procedures violate due process requirements, leaving an injured worker at the mercy of an unscrupulous insurance carrier.

## BAD FAITH CLAIM

A.R.S. § 23–906(A) exempts employers and compensation insurance carriers from

damages at common law if the employer provides workers' compensation insurance coverage, unless an employee rejects this coverage and retains the right to sue the employer as provided by law. A.R.S. § 23–1022(A) states that the right to recover compensation is the "exclusive remedy" against the employer or the insurance carrier unless the injury was caused by the employer's "wilful misconduct." These statutes provide the Industrial Commission with the

> exclusive jurisdiction to determine all questions of fact and of law, including equitable remedies or defenses as they relate to compensation insurance, or related powers or matters, subject, of course, to the right of review as to whether the commission's orders were supported by evidence.

*S.H. Kress & Co. v. Superior Court*, 66 Ariz. 67, 69, 182 P.2d 931, 933 (1947). The exclusivity provision of the statute is "'part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance,'" *Vineyard v. Southwest Engineering and Contracting Co.*, 117 Ariz. 52, 53, 570 P.2d 823, 824 (App.1977), *quoting* 2A A. Larson, *Workmen's Compensation Law* § 65.10 at 12–4, now § 65.11 at 12–1–12–2.

In *Sandoval v. Salt River Project*, this court held that the exclusive remedy provision precluded superior court subject matter jurisdiction to consider an injured worker's claims for breach of contract and tortious conduct against a self-insured employer or its claims administrator where "the basic contention of the claimant is that he has been wrongfully deprived of benefits due under the Workmen's Compensation laws." 117 Ariz. at 214, 571 P.2d at 711.

Franks argues that the complaint states a claim for relief for USF & G's bad faith, a tort claim over which the superior court has jurisdiction. He contends that his claim for bad faith is not a case of an employee suing on an employment-connected accident, but is rather a completely independent cause of action for a tort, which is not within the purview of the exclusivity provision of the Workers' Compensation Act. He further argues that the elements for which damages are sought (pain, mental distress, etc.) are not compensable under the Workers' Compensation Act. Franks further urges that *Sandoval* must be reconsidered in light of *Noble v. National American Life Insurance Co.*, 128 Ariz. 188, 624 P.2d 866 (1981) and *Sparks v. Republic National Life Insurance Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982) *cert. denied* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982).

USF & G responds that according to A.R.S. § 23–1022(A), recovery under the Workmens' Compensation Act is Franks's exclusive remedy. USF & G cites a line of Arizona cases including *Sandoval* as authority for the proposition that the superior court lacks subject matter jurisdiction over Franks's claim.[1] USF & G contends that previous Arizona cases have ruled that the damages sought by Franks do not change the superior court's lack of jurisdiction, relying on *Sandoval*.

A.R.S. § 23–1021 limits the application of the workers' compensation laws to employees injured *"by accident arising out of and in the course of his employment ...."* (Emphasis added.) The exclusive remedy provisions apply only when the injury is covered by the Workers' Compensation Act. *Williams v. Magma Copper Co.*, 5 Ariz.App. 236, 425 P.2d 138 (1967). Franks advocates that when a workers' compensation insurer acts in bad faith in settlement or payment of compensation benefits, a separate tort is committed that is not subject to the exclusivity provision of the Workers' Compensation Act as it is not a direct or natural consequence of the original compensable injury. If the conduct constitutes bad faith we must determine

---

1. Other cases cited include: *S.H. Kress & Co. v. Superior Court*, 66 Ariz. 67, 182 P.2d 931 (1947); *Hixon v. Morse*, 120 Ariz. 356, 586 P.2d 201 (App.1978); *O'Connor v. Howard P. Foley Co.*, 17 Ariz.App. 151, 496 P.2d 141 (1972).

whether a cause of action for bad faith is barred by the exclusive jurisdiction of the Workers' Compensation Act remedy. *Sandoval v. Salt River Project.*

*Noble v. National American Life Insurance Co.* recognized "a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort." 128 Ariz. at 190, 624 P.2d at 868. A claim based on this violation of duty to the insured is often called "first-party" bad faith. The *Noble* court set forth the elements of the tort:

"To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one."

*Id., quoting Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978). *Sparks v. Republic National Life Insurance Co.* also emphasized that the tort is an intentional one:

[T]he inquiry into whether an insurer has acted in bad faith is a question of reasonableness under the circumstances of the case. Any action taken by the insurer on a claim submitted by an insured will necessarily be an intentional act.

132 Ariz. at 538, 647 P.2d at 1136.

A claim by an injured employee against the workers' compensation carrier is a first-party claim, *Travelers Insurance Co. v. Savio,* 706 P.2d 1258, 1272 (Colo.1985) and the *Noble* elements of bad faith must be met. Because the complaint alleges that the hearing officer at the Industrial Commission made a finding that the insurance carrier had not acted in good faith, we must assume for this appeal that USF &

G's conduct constitutes first-party bad faith. However, *Noble* and *Sparks* concerned medical benefits policies in which a legislative scheme for compensation was not an issue. We turn now to the law of workers' compensation to determine whether the claims alleged by Franks are within the scope of the Workers' Compensation Act.

■ The Workers' Compensation Act does not bar a common law tort action that is independent of the workers' benefit claim process if the conduct does not fall within the coverage of the Act. *Sandoval v. Salt River Project.* There are two different analyses used to reach this conclusion. The first, recognized in *Sandoval,* is based on an exception to the exclusive remedy provision. The exception permits an employee who is injured in the course of his employment by a third person to sue the third person for damages. *E.g.,* A.R.S. § 23–1023. An insurance carrier who engages in an intentional tort against a claimant may be viewed as becoming such a third person subject to suit because the carrier has stepped outside its proper statutory role. *Unruh v. Truck Insurance Exchange,* 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972) (extreme and outrageous conduct during claim investigation).[2]

The second analysis focuses on the separate nature of the intentional tort and resulting injury from the employment-related accident and injury. This view was accepted by the Colorado Supreme Court in a case holding that there was a cause of action for bad faith against a carrier for the handling of an employee's claim for vocational rehabilitation benefits:

[A] compensation carrier's intentional misconduct in the processing of a claim is neither a "direct" nor a "natural" consequence of an employment injury. Any

---

**2.** However, this exception is limited to claims for actions that are so extreme and outrageous that it is not within the range of activities expected of insurance companies and therefore the statutory immunity from suit does not apply. The California courts have consistently refused to apply the *Unruh* exception to actions

alleging negligent or intentionally improper claim processing such as a refusal to pay benefits. *E.g., Santiago v. Employee Benefit Services,* 168 Cal.App.3d 898, 214 Cal.Rptr. 679 (1985); *Cervantes v. Great Amer. Ins. Co.,* 140 Cal. App.3d 763, 189 Cal.Rptr. 761 (1983).

liability for injuries occasioned by such conduct cannot be deemed liability for injuries arising out of the course of employment.

*Travelers Insurance Co. v. Savio,* 706 P.2d at 1265. The *Savio* court noted that Colorado's Workmen's Compensation Act

> contains no provision indicating that claims against an employer or insurer for bad faith in handling a claim for compensation or treatment are covered by its provisions, nor does the Act suggest any limitation on the potential remedies available for such conduct. Rather the Act is primarily directed to the delineation of appropriate treatment of employment-related injuries and compensation to injured employees or, in the case of death, to the employees' decedents.

*Id.,* 706 P.2d at 1264.

█ We agree with the Colorado Supreme Court that bad faith by a carrier in the handling of a workers' compensation claim does not arise out of and in the course of employment. We believe that nowhere does the Arizona Workers' Compensation Act address the injuries claimed by Franks. Therefore, the Workers' Compensation Act with its exclusive remedy provision does not apply.

We hold that the *Sandoval* decision is not controlling under the facts of the case at bar. *Sandoval* did not involve an allegation of bad faith against an insurance carrier. There was no Industrial Commission finding of bad faith in *Sandoval.* The tort of bad faith was established in *Noble,* which was decided long after *Sandoval,* so this court could not have considered bad faith in *Sandoval.* Additionally, the *Sandoval* opinion recognized the possibility of an actionable tort within the jurisdiction of the superior court.

> Our holding does not entirely preclude the possibility that an actionable tort within the jurisdiction of the superior court might be committed by a self-insured employer or compensation carrier while engaged in the processing of a workmen's compensation claim.

117 Ariz. at 214, 571 P.2d at 711, citing *Unruh v. Truck Insurance Exchange* as an example.

Finally in *Sandoval,* unlike Franks's case, the essence of the claim alleged in superior court was deprivation of benefits and suit was filed while a hearing was pending before the Industrial Commission regarding those same benefits. In the present case the claim was only for damages due to the tort of bad faith.

Other jurisdictions have allowed claims for intentional infliction of emotional distress and for violation of the implied covenant of good faith in an insurance contract, despite exclusive remedy provisions of the state workers' compensation acts. *Travelers Insurance Co. v. Savio; Gallagher v. Bituminous Fire and Marine Insurance Co.,* 303 Md. 201, 492 A.2d 1280 (1985) (exclusive remedy and penalty provisions do not bar claim for intentional infliction of emotional distress if such claim is properly pleaded); *Hayes v. Aetna Fire Underwriters,* 187 Mont. 148, 609 P.2d 257 (1980) (8 A.L.R. 4th 892) (intentional tort arising in adjusting of claim does not arise out of employment relationship); *Southern Farm Bureau Casualty Insurance Co. v. Holland,* 469 So.2d 55 (Miss.1984) (injury from intentional tort is separate from employment injury; penalty statutes inadequate to deter intentional wrongdoing by carrier); *Coleman v. American Universal Insurance Co.,* 86 Wis.2d 615, 273 N.W.2d 220 (1979) (cause of action for carrier's bad faith is not extinguished by exclusivity provision or by statutory penalties for inexcusable delay in payouts), *but see Messner v. Briggs & Stratton Corp.,* 120 Wis.2d 127, 353 N.W.2d 363 (App.1984) (injury from improper claim handling is employment-related) and WIS. STAT.ANN. 102.18(1)(bp) (West Supp.1985) (apparent legislative overrule of *Coleman* ).

We also note that there are many jurisdictions that have refused to allow tort actions for bad faith or intentional infliction of emotional distress based upon the exclusive remedy provisions of workers' compensation systems. 2A A. Larson,

§ 68.34(c); Annot., "Tort Liability of Workers' Compensation Insurer for Wrongful Delay or Refusal to Make Payments Due," 8 ALR 4th 902 (1981). *See Whitten v. American Mutual Liability Insurance Co.,* 468 F.Supp. 470 (D.S.C.1977), *aff'd mem.,* 594 F.2d 860 (4th Cir.1979) (South Carolina Act's penalty provisions are remedy for breach of contract); *Robertson v. Travelers Insurance Co.,* 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983) (remedy for unreasonable or vexatious delay in payment is solely under statutory penalties); *Physicians and Surgeons Hospital v. Leone,* 399 So.2d 806 (La.Ct.App.1981) (exclusive remedy provision precludes suit for emotional and mental anguish); *Young v. United States Fidelity & Guaranty Co.,* 588 S.W.2d 46 (Mo.App.1979) (claim status review procedure by Division of Workmen's Compensation would deter intentional conduct); *Dickson v. Mountain States Mutual Casualty Co.,* 98 N.M. 479, 650 P.2d 1 (1982) (Workmen's Compensation Act provides the remedies for failure to pay benefits, regardless of insurer's intent).

Our holding that a plaintiff may pursue a remedy against a workers' compensation carrier is in harmony with another statutory exception to the exclusive remedy provision. A.R.S. § 23–1022 (Supp.1985) contains an "intentional injury" exception to the exclusive remedy provisions of the act:

A. The right to recover compensation pursuant to this chapter for injuries sustained by an employee or for the death of an employee is the exclusive remedy against the employer or any co-employee acting in the scope of his employment, and against the employer's workers' compensation insurance carrier or administrative service representative, except as provided by § 23–906, and except that if the injury is caused by the employer's wilful misconduct, or in the case of a co-employee by the co-employee's wilful misconduct, and the act causing the injury is the personal act of the employer, or in the case of a co-employee the personal act of the co-employee, or if the employer is a partnership, on the part of a partner, or if a corporation, on the part of an elective officer of the corporation, and the act indicates a wilful disregard of the life, limb or bodily safety of employees, the injured employee may either claim compensation or maintain an action at law for damages against the person or entity alleged to have engaged in the wilful misconduct.

B. "Wilful misconduct" as used in this section means an act done knowingly and purposely with the direct object of injuring another.

Both *Noble v. American Life Insurance Co.* and *Sparks v. Republic National Life Insurance Co.* held that bad faith is an intentional tort.

Many jurisdictions have a penalty provision for a carrier's delay or denial of benefits. As the dissent notes, Arizona does not provide even this. [*See Still v. Industrial Commission,* 146 Ariz. 433, 706 P.2d 759 (App.1985), which suggests that our workers' compensation scheme was not designed to have jurisdiction over all claims that relate to compensation carrier conduct.] We are not relying on the absence of penalty provisions for delaying or denying payments in the Arizona workers' compensation scheme. We note, however, that there are courts which recognize a cause of action for bad faith or intentional infliction of emotional distress despite such penalty provisions. These courts do so for two reasons which support our conclusion in the instant matter.

First, a penalty provision may not be designed to remedy intentional torts. "Conduct which is inexcusable is ... in most cases far short of bad faith .... The [10 percent penalty for] inexcusable-delay provision ... does not contemplate that the intentional tort of bad faith can be expiated merely by payments augmented in the amount of 10 percent." *Coleman v. American Universal Insurance Co.,* 86 Wis.2d at 625, 273 N.W.2d at 224.

Second, there is a strong public policy reason to find that the penalty provisions do not create a bar to a bad faith suit:

deterrence of willful and wrongful behavior by compensation carriers.

Mississippi Code Annotated section 71–3–37(5) and 71–3–37(6) (1972) provides for ten percent and twenty percent penalty for non-payment of an installment of compensation dues. This provision of the Act did not contemplate the commission of an independent tort, and its penalty is hardly adequate to deter willful actions of an over-reaching insurance company against a weekly wage earner. In the case sub judice the maximum penalty for [the claimant's] denial of benefits ... would have only been $2.50 per week. The penalty provisions, designed to provide some measure of compensation where claims are not promptly paid due the negligence of the carrier, are inadequate to deter intentional wrongdoing by the carrier.

*Southern Farm Bureau Casualty Insurance,* 469 So.2d at 58. *See also Hayes v. Aetna Fire Underwriters.*

## CONSTITUTIONAL RIGHTS ISSUE

The right to sue for tort damages is guaranteed by state constitutional provisions. Article 18, § 6 of the Arizona Constitution provides, "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Article 2, § 31 also protects the right to sue for damages, "No law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person." *See Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984); *Barrio v. San Manuel Division Hospital,* 143 Ariz. 101, 692 P.2d 280 (1984). The non-abrogation clause and the no damage limitation clause are interrelated as they guarantee the same basic right. "It is fair to suppose that by curtailing the legislature's power to limit the amount of damages recovered the [constitutional] convention intended to proscribe legislation which would abolish or abrogate causes of action, since abrogation not only limits the amount recoverable but allows no recovery at all."

*Kenyon v. Hammer,* 142 Ariz. at 81, 688 P.2d at 973, n. 9.

In *Barrio,* the supreme court affirmed "that the abrogation clause is implicated when the right of action is 'completely abolished.'" 143 Ariz. at 106, 692 P.2d at 285, *quoting Ruth v. Industrial Commission,* 107 Ariz. 572, 490 P.2d 828 (1971). In the present case the right of action of bad faith for this plaintiff or any plaintiff in similar circumstances was completely abolished because the superior court dismissed the action for lack of jurisdiction and because *Sandoval* held the remedy for deprivation of benefits by the carrier was a hearing under A.R.S. § 23–1061(J). (*See Still v. Industrial Commission,* holding that the Commission has no jurisdiction absent a statute to impose sanctions or assess penalties against an insurance carrier for bad faith.)

In *Ruth v. Industrial Commission,* the supreme court upheld the constitutionality of a statute (A.R.S. § 23–1023 [1965]) which allowed an employee to either accept compensation and sue a third party tortfeasor or reject compensation and sue a third party completely on his own, but which did not require the compensation insurer to pay a fair share of the employee's suit expense if the employee had accepted compensation and recovered from the third party. The supreme court held that the statute did not violate the non-abrogation clause of the Arizona Constitution, Art. 18 § 6. The *Ruth* holding was based on the claimant having an election of remedies. The court held that when an election of remedies was available, the right to sue was "not nullified or destroyed," 107 Ariz. at 575, 490 P.2d at 831.

The continued validity of the election of remedies analysis was established in *Barrio,* 143 Ariz. at 106, 692 P.2d at 285. *Barrio* also distinguished between regulation and abrogation of a cause of action and pointed out that "regulation" may become so restrictive of the right to sue for damages that an unconstitutional abrogation would occur. *Id.* In the case before us Franks's right to sue for the tort of bad

faith would be nullified and no remedy would be provided by which he may recover damages resulting from the tort, as distinguished from damages resulting from his original injury, if we were to hold his cause of action for the intentional tort is barred by the statutory workers' compensation scheme.

The *Sandoval* holding that a hearing pursuant to A.R.S. § 23–1061(J) was the claimant's remedy for deprivation of benefits was not written in the context of a constitutional challenge, which is present in the instant matter. The statute provides a remedy only in the sense that a claimant has a forum to air a grievance:

> **A.R.S. § 23–1061(J).** The commission shall investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled. If the commission determines that payment or denial of compensation is improper in any way, it shall hold a hearing....

Authorizing the commission to hold a hearing (which was denied to Franks) does nothing to compensate the claimant for the loss of use of benefits, or for tort injuries the claimant has suffered from the carrier's conduct, such as mental distress. A mere forum for a grievance does not provide an election of remedies that satisfies the non-abrogation clause. In a constitutional sense, a claimant who cannot obtain damages via the compensation system or the court system has suffered an abrogation of a right of action.

USF & G argues that Art. 18, § 8 of the Arizona Constitution specifically authorizes the system of workers' compensation that has been set up by the legislature so Franks cannot rely on a theory of unconstitutionality. USF & G also relies on A.R.S. § 23–906 which permitted Franks to elect between the workers' compensation system or the right to sue under the common law. However, compensation law is exclusive only when, in fact, it provides a remedy. The injury that occurs as a result of the tort of bad faith is a separate and distinct injury from the original industrial injury to the worker giving rise to the election of remedy under compensation law. The injury resulting from the intentional tort of bad faith is not compensable under the workers' compensation scheme because it does not arise out of or in the course of employment.

■ Although the dissent claims the tort of bad faith is not covered by the provisions of Art. 18, § 6 of the Arizona Constitution because it has "recently been created by judicial decision," *post* at 206, it arises from a well-recognized principle of the common law that an insurance contract has an implied obligation of good faith and fair dealing. *Germania Insurance Co. v. Rudwig & Co.*, 80 Ky. 223 (1882) (innocent misrepresentations by insured in life insurance application made a part of contract do not entitle insurer to avoid policy; such a result would subvert "that rule of good faith and fair dealing that should enter into and form a part of every insurance contract," 80 Ky. at 235). There is, then, a history in the common law for the tort of bad faith.

The dissent principally relies on *Industrial Commission v. Frohmiller*, 60 Ariz. 464, 140 P.2d 219 (1943) for the proposition that Art. 18 § 6 does not apply. In that case the supreme court explained:

> If the right to recover damages or compensation under the common law for injury caused by occupational disease existed at the time these constitutional provisions were adopted, this contention of defendant [that the Arizona Occupational Disease Disability Law is an unconstitutional abrogation] would have some force. But it is our view that no right of action solely for occupational disease existed at common law, though perhaps it was incidental to some other acts of negligence, and that no constitutional or statutory provision allowed recovery for such a disability, and hence that the option given by section 60 merely preserves the right of action, provided one exists. It is true that some of the states have held that an occupational disease falls

within the common law liability of an employer who is guilty of negligence, but when the constitution of this state was adopted occupational diseases had neither a common law history nor statutory origin. In *McCreery v. Libby-Owens-Ford Glass Company*, 363 Ill. 321, 2 N.E. (2d) 290, 293, 105 A.L.R. 75, the court said: 'As we pointed out in the *Boshuizen* case, *supra [Boshuizen v. Thompson & Taylor Co.]* 360 Ill. 160, 195 N.E. 625], the matter of occupational diseases has neither common-law history nor origin. We should add that those diseases were likewise unknown to medical science during the formative period of our common law.'

*Industrial Commission v. Frohmiller*, 60 Ariz. at 468–69, 140 P.2d at 221. According to *Frohmiller*, the theory of inapplicability of the non-abrogation clause originates with the fact that the injury itself was unknown, even to medical science, and therefore there was no common law history for a cause of action for damages from such an injury at the time this state's constitution was adopted.

Such a theory is not relevant to the instant case. Bad faith is an intentional tort. Intentional torts were well-recognized at the time of adoption of the Constitution. *E.g., Iaegar v. Metcalf*, 11 Ariz. 283, 94 P. 1094 (1908) (assault and battery). As noted above, the tort of bad faith arises from a long-accepted principle of the common law. Furthermore, we need look no further than the words of the Constitution itself. The plain words of the non-abrogation clause contain no limitations such as the dissent reads into them. *See Kilpatrick v. Superior Court*, 105 Ariz. 413, 466 P.2d 18 (1970).

Article 18, § 6 and Article 2, § 31 of the Arizona Constitution guarantee the right of action to sue for damages. *Kenyon v. Hammer*. Prior cases have been faced with issues concerning the right to bring a cause of action sounding in negligence. *Barrio v. San Manuel Division Hospital; Kenyon v. Hammer; Industrial Commission v. Frohmiller; Alabam's Freight Co. v. Hunt*, 29 Ariz. 419, 242 P. 658 (1926). However, we see nothing in the language of the constitutional provisions or in the history of their adoption, *Kenyon v. Hammer*, 142 Ariz. at 79–81, 688 P.2d at 971–73, n. 9, which suggests the protections of Art. 18, § 6 and Art. 2, § 31 are limited solely to negligence actions. Indeed, intentional torts were part of the common law prior to the adoption of the Arizona Constitution by the Constitutional Convention of 1910.

■ Additionally, Article 2, § 23 of the Arizona Constitution guarantees plaintiffs the right to trial by jury. The right applies to civil claims for intentional torts. *See Apache Playtime, Inc. v. Universal Playtime, Inc.*, 27 Ariz. App. 178, 552 P.2d 767 (1976). An employee's election of coverage under the Workers' Compensation Act, A.R.S. § 23–906, an election which waives a right to jury trial, is a waiver only as to claims where the Act in fact applies. *See Industrial Commission v. Frohmiller*.

Therefore we hold the superior court has jurisdiction over Franks's claim under Article 6, § 14 [3] of the Arizona Constitution. The judgment of the trial court dismissing the complaint for lack of jurisdiction is reversed and the case remanded for further proceedings consistent with this opinion.

MEYERSON, P.J., concurs.

HAIRE, Judge, dissenting:

The issue presented in this appeal is whether the superior court had jurisdiction

---

3. **Art. 6, § 14. Superior court; original jurisdiction**

Section 14. The superior court shall have original jurisdiction of:

1. Cases and proceedings in which exclusive jurisdiction is not vested by law in another court.

\* \* \* \* \* \*

3. Other cases in which the demand or value of property in controversy amounts to one thousand dollars or more, exclusive of interest and costs.

\* \* \* \* \* \*

11. Special cases and proceedings not otherwise provided for, and such other jurisdiction as may be provided by law.

to consider plaintiffs' claim for damages resulting from the allegedly tortious manner in which USF & G administered plaintiffs' claim for workers' compensation benefits. It was assumed for the purposes of USF & G's motion to dismiss that the allegations of plaintiffs' complaint were true. The superior court concluded that it had no jurisdiction, relying on this court's opinion in *Sandoval v. Salt River Project Agricultural Improvement & Power District,* 117 Ariz. 209, 571 P.2d 706 (1977).

In my opinion, *Sandoval* is clearly controlling and dispositive. Since the majority labors mightily to distinguish *Sandoval,* I find it necessary to quote liberally from *Sandoval* in order to demonstrate its applicability. *Sandoval,* like this appeal, involved a claim for damages arising from the allegedly tortious manner in which the plaintiff's claim for workers' compensation benefits had been administered. In *Sandoval,* we discussed Sandoval's complaint as follows:

"Sandoval's 'third claim for relief' asserts claims against both the employer and its Workmen's Compensation administering agent, Swett & Crawford. The allegations of the third claim all relate to the motive and intent of the defendants underlying the issuance of notices of claim status in the Workmen's Compensation proceedings, and the alleged wrongful denial of benefits in the processing of his Workmen's Compensation claim. The conduct of the defendants in making decisions and issuing notices of claim status in Sandoval's Workmen's Compensation proceedings is described in the third claim for relief as being intentionally 'false and erroneous;' constituting 'intentional wrongful suspension of compensation benefits;' and, as causing 'undue hardship and great mental suffering and emotional distress.' It is stated in the third claim that the claims being made against the defendants are: 'for the torts of injurious falsehood, intentional breach of fiduciary duties, false representations, negligence, recklessness, wilful and wanton and outrageous conduct, and intentional infliction of mental suffering.'

"Although Sandoval asserts that in the Superior Court action he is not 'making claim for benefits to which he is entitled under the Workmen's Compensation Act,' it is obvious from his complaint that all of the claims are based entirely upon the assertion that Salt River Project and Swett & Crawford either intentionally or negligently failed to provide him with benefits he was or may be entitled to under the Workmen's Compensation laws." 117 Ariz. at 213, 571 P.2d at 710.

In discussing the jurisdictional issue raised by Sandoval's claim, we stated:

"In our opinion the trial court correctly concluded that claims of this nature lie within the exclusive jurisdiction of the Industrial Commission. The Arizona Workmen's Compensation Act establishes a comprehensive system for the adjudication of all controversies arising out of the processing of the injured workman's claim for benefits, *see McMurray v. Industrial Commission,* 25 Ariz.App. 614, 545 P.2d 462 (1976), and the jurisdiction of the Industrial Commission is exclusive in that regard. *See Liberty Mutual Insurance Co. v. Western Casualty & Surety Co.,* 111 Ariz. 259, 527 P.2d 1091 (1974); *Lowery v. Universal Match Corporation,* 6 Ariz.App. 98, 430 P.2d 444 (1967); *Industrial Commission v. Superior Court, supra* [5 Ariz.App. 100, 423 P.2d 375 (1967)]. Thus in *O'Connor v. Howard P. Foley Co.,* 17 Ariz.App. 151, 496 P.2d 141 (1972), the Court of Appeals affirmed the trial court's dismissal of an action by an injured employee against his employer. The employee had become dissatisfied with the Workmen's Compensation proceedings and filed an action in the superior court alleging that the employer had breached a contractual duty to abide by the Workmen's Compensation laws and rules. This attempted circumvention of the Industrial Commission and the processes involved in the Workmen's Compensation statutory scheme was not allowed. In *Hixon v. State Compensation Fund,* 115 Ariz.

392, 565 P.2d 898 (App.1977), the appellate court affirmed the trial court's dismissal of a complaint alleging intentional infliction of mental and emotional distress by two State Compensation Fund employees in conspiring to improperly terminate the plaintiff's workmen's compensation benefits. The Court of Appeals held that the superior court lacked jurisdiction, noting that if the appellant's benefits had been improperly terminated, appellant's sole remedy was to proceed before the Industrial Commission." 117 Ariz. at 213–214, 571 P.2d at 710–711. We then held:

"We hold that regardless of the intentional or negligent manner in which a decision is made, the Workmen's Compensation law provides the exclusive remedy for review of any administrative decision made by a carrier or self-insured employer in which the basic contention of the claimant is that he has been wrongfully deprived of benefits due under the Workmen's Compensation laws. Any other holding would result in multiple jurisdictions being engaged in the resolution of the same basic questions with the possibility of conflicting results. A good illustration of this possibility is evidenced by the case at hand. While this appeal was pending, the Industrial Commission ruled in the employer's favor in the Workmen's Compensation proceeding on Sandoval's contentions concerning the alleged 'wrongful and erroneous' Notices of Claim Status and the alleged wrongful deprivation of compensation benefits." 117 Ariz. at 214, 571 P.2d at 711.

In discussing the remedies available to Sandoval, we stated:

"If the carrier deprives the claimant of benefits by failing to comply with the Notice of Claim Status previously issued or in any other manner, A.R.S. § 23–1061(J) provides a remedy whereby the claimant may invoke the Commission's jurisdiction to force compliance.

"Sandoval complains that the mere forcing of compliance does not give him an adequate remedy, and that he should be allowed to recover damages. As a policy matter, there might be some basis for this contention. However, rights under the Workmen's Compensation laws are completely statutory, and such arguments are best addressed to the legislature." 117 Ariz. at 215, 571 P.2d at 712.

The majority's attempts to distinguish *Sandoval* are unconvincing. The law would be better served by a forthright statement by the majority, supported by legal reasoning, that it finds *Sandoval* unpersuasive and therefore refuses to follow its holding.

It makes no sense to attempt to distinguish *Sandoval* on the basis that it "did not involve an allegation of bad faith against an insurance carrier." When stripped of excess verbiage, the allegations in *Sandoval* and in this case are substantially similar in legal theory. They both assert claims for damages based upon the allegedly tortious manner in which the carrier or its representative administered the plaintiff's claim for workers' compensation benefits.

Likewise, the majority can find no support in *Sandoval's* statement that its holding did not entirely preclude the possibility of an actionable tort within the jurisdiction of the superior court. The *complete* statement in this regard from *Sandoval* is:

"Our holding does not entirely preclude the possibility that an actionable tort within the jurisdiction of the superior court might be committed by a self-insured employer or compensation carrier while engaged in the processing of a workmen's compensation claim. For example, if an investigator hired by the Salt River Project were to break into Mr. Sandoval's home and put a concealed tape recorder in his living room, he would clearly have a remedy in the superior court for that wrong, regardless of whether his claim for workmen's compensation benefits was subsequently granted or denied. *See, e.g., Unruh v. Truck Insurance Exchange*, 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972). But where the essence of the

claim is the alleged wrongful deprivation of benefits, the Industrial Commission has the exclusive jurisdiction to adjudicate that controversy." 117 Ariz. at 214–215, 571 P.2d at 711–712.

The majority also relies on the "intentional injury" exception to the exclusive remedy provisions of A.R.S. § 23–1022(A). They reason that since *Noble* held that the tort of bad faith is an intentional tort, the remedy sought by Franks in this case falls within the statutory exception. The language of A.R.S. § 23–1022(A) furnishes no support for the majority's position. That section initially provides that the right to recover compensation pursuant to the workers' compensation act for injuries sustained by an employee:

"is the exclusive remedy against the employer ..., and against the employer's workers' compensation insurance carrier or administrative service representative, ... except that if the injury is caused by the employer's wilful misconduct ... and the act causing the injury is the personal act of the employer ... and the act indicates a wilful disregard of the life, limb or bodily safety of employees, the injured employee may either claim compensation or maintain an action at law for damages against the person or entity alleged to have engaged in the wilful misconduct."

From the statutory language it is immediately apparent that the exception applies only to wilful misconduct *of the employer,* where the act causing the injury is the personal act *of the employer.* Here, the alleged misconduct or intentional acts were those of the insurance carrier, not the employer. Additionally, the remedy provided by A.R.S. § 23–1022(A) under the exception is the right to claim *compensation* or maintain an action at law for damages. From this provision it becomes clear that the "injury" referred to in the exception is the

injury which gives rise to the claimant's rights to workers' compensation benefits, not some later injury which would not entitle the claimant to workers' compensation coverage.

Before departing from the discussion of the provisions of A.R.S. § 23–1022(A), I wish to make one further observation. Prior to 1980, the exclusive remedy provisions of § 22–1022(A) and § 23–906(A) did not expressly apply to "the employer's workers' compensation insurance carrier or the administrative service representative" of the carrier.[1]

In 1980, these statutes were amended so as to include the above quoted language. Laws 1980, Ch. 246, §§ 21 and 26. This legislative action occurred shortly after the issuance of this court's opinion in *Sandoval.* Therefore, it would appear that such amendments constitute a legislative recognition and adoption of the exclusive remedy holdings of *Sandoval,* especially since the statutory reference to remedies against "administrative service representatives" could only apply to actions by these service representatives in the processing of workers' compensation claims.

The majority also indicates that somehow Franks was entitled to assert his bad faith claim in the superior court because he allegedly requested a § 23–1061(J) hearing before the Industrial Commission, but did not receive one. This reasoning is unsound. If the Industrial Commission failed to comply with its statutory duties, the appropriate remedy is to seek review in this court through the filing of a Rule 10 Special Action—Industrial Commission, or perhaps the filing of a petition for special action relief in the superior court in the nature of mandamus.

The majority's next contention is that a refusal to allow Franks to assert his bad

---

1. A.R.S. § 23–906(A) now provides:

"A. Employers who comply with the provisions of § 23–961 or 23–962 as to securing compensation, and the employers' workers' compensation insurance carriers or administrative service representatives, shall not be liable for damages at common law or by statute, except as provided in this section, for injury or death of an employee wherever occurring, but it shall be optional with employees to accept compensation as provided by this chapter or to reject the provisions of this chapter and retain the right to sue the employer as provided by law."

faith claim in the superior court would result in the complete abolishment or "abrogation" of his bad faith claim, a result which allegedly is prohibited by the provisions of art. 18, § 6 of the Arizona Constitution. That provision is as follows:

"Section 6. The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

The contention is faulty on two bases.

First, as pointed out in *Sandoval,* A.R.S. § 23–1061(J) gives Franks a remedy for relief before the Industrial Commission for his claim relating to the alleged wrongful administration of his workers' compensation claim. The mere fact that he would prefer other or different relief from that to which he is entitled under the statute does not mean that his rights have been "abrogated". His concerns should be addressed to the legislature with a request that statutory amendments be enacted so as to give the Commission the express power[2] to impose penalties and sanctions for carrier misconduct. This has been accomplished in many jurisdictions in response to problems of the nature voiced by Franks. *See, e.g., Old Republic Ins. Co. v. Whitworth,* 442 So.2d 1078 (Fla.App.1983); *Messner v. Briggs & Stratton Corp.,* 120 Wis.2d 127, 353 N.W.2d 363 (Wis.App.1984) (discussing recently enacted Wisconsin statutes which constitute a legislative overruling of *Coleman v. American Universal Ins. Co.,* 86 Wis.2d 615, 273 N.W.2d 220 (1979), a case relied on by the majority).

I additionally note that the provisions of art. 18, § 6 are totally inapplicable to the tort of bad faith, since it has only recently been created by judicial decision. Art. 18,

§ 6 does not apply to causes of action which have been created subsequent to the adoption of the Arizona Constitution. *See Industrial Commission v. Frohmiller,* 60 Ariz. 464, 140 P.2d 219 (1943); *Rail N Ranch Corp. v. State,* 7 Ariz.App. 558, 441 P.2d 786 (1968).

In conclusion, my concerns on the issues presented in this appeal have been previously stated in *Sandoval,* a holding which fits this case like the proverbial glove.[3] *Sandoval* is in accord with the majority of the decisions in other jurisdictions which have considered the issue. *See Robertson v. Travelers Ins. Co.,* 95 Ill.2d 441, 69 Ill. Dec. 954, 448 N.E.2d 866 (1983). I would affirm the judgment of dismissal entered by the superior court.

---

**2.** The majority correctly notes that in *Still v. Industrial Commission,* 146 Ariz. 433, 706 P.2d 759 (Ariz.App.1985), this court held that the Industrial Commission had no authority to impose sanctions or impose penalties against an insurance carrier for the tort of bad faith. However, the *Still* court pointed out that relief was available to a claimant under A.R.S. § 23–1061(J) and § 23–966(A). I would further suggest that pursuant to A.R.S. § 23–107(A)(6), the Commission might well have the authority to

enact rules which would establish sanctions and penalties to be assessed on the basis of carrier misconduct.

**3.** From a policy standpoint, in my opinion the legislature should enact additional legislation giving the Industrial Commission the express authority to impose sanctions and penalties in this and other areas involved in the processing of workers' compensation claims.