NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MARIE GRADIS,
*Plaintiff/Appellant*,

*v.*

BANNER HEALTH; BANNER PLAN
ADMINISTRATION, INC.; CAROL WARD,
*Defendants/Appellees*.

No. 1 CA-CV 16-0056
FILED 2-28-2017

---

Appeal from the Superior Court in Maricopa County
No.  CV2014-006089
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

---

COUNSEL

Mandel Young, PLC, Phoenix
By Taylor C. Young, Peter A. Silverman, Erin Ford Faulhaber
*Co-Counsel for Plaintiff/Appellant*

Doyle, LLP, Phoenix
By Michael P. Doyle, Patrick M. Dennis
*Co-Counsel for Plaintiff/Appellant*

Quarles & Brady, LLP, Phoenix
By Stephanie J. Quincy, Robert G. Vaught, Brian A. Howie
*Counsel for Defendants/Appellees*

_____

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Margaret H. Downie and Judge James P. Beene joined.

_____

**J O H N S E N**, Judge:

**¶1**        Marie Gradis appeals the superior court's entry of summary judgment dismissing her complaint against her former employer, Banner Health; its worker's compensation administration company, Banner Plan Administration, Inc.; and the latter company's claims worker, Carol Ward (collectively "Banner").  For the reasons explained below, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        Gradis, a certified nursing assistant, hurt her back while working at a Banner Health facility in April 2012.  She filed a claim for worker's compensation; Banner, which is self-insured for purposes of worker's compensation coverage, denied the claim.  After Gradis appealed, an Administrative Law Judge ("ALJ") issued a decision in May 2013 finding Gradis had established a compensable injury and awarded her benefits.

**¶3**        Several months before her on-the-job injury, Gradis had filed a charge of employment discrimination against Banner Health.  On October 24, 2012, while her appeal of Banner's denial of her worker's compensation claim was pending, Gradis and Banner Health executed a "Settlement Agreement and General Release" ("Agreement") that resolved the discrimination claim.

**¶4**        The Agreement's recitals addressed Gradis's claim for discrimination and recounted a mutual "desire to settle and finally resolve any and all outstanding matters and disputes between them related to any claims GRADIS may have in relation to [her] employment or with the ending of her employment with BANNER."  The Agreement's "Payment" section stated that the designated payment by Banner to Gradis

> is full compensation for any and all past, present, or future claims of emotional distress, anxiety, depression, trauma, any physical, psychiatric, or psychological manifestations thereof, any claims of temporary or permanent disability, loss of consortium, bodily injury, defamation, personal injury, impairment of his [sic] ability to compete in the open labor

2

market, pain and suffering, lost income, damage to reputation or character, attorneys fees, if any exist, or any other claims, ASSERTED OR UNASSERTED, KNOWN OR UNKNOWN, rights, damages, costs, loss of services, expenses and compensation of any nature whatsoever, arising from or associated with GRADIS' employment relationship and/or the termination of her employment with BANNER or arising out of any of the events described in the Recitals above. *This Agreement does not impact Gradis' application for worker's compensation or disability benefits, either positively or negatively.*

(Emphasis added.) In the Agreement's "Release of Claims" section were the following three paragraphs:

[2]a. . . . GRADIS . . . further agrees not to institute any claims, charges or lawsuits in relation to any aspect of GRADIS' employment relationship and/or the ending of her employment with BANNER. GRADIS does hereby waive, release and forever discharge [Banner] . . . from any and all rights, claims, demands, causes of action . . . and liability of any nature whatsoever that GRADIS has had in the past or may hereafter have against . . . any of them, arising out of, or by reason of any cause, matter, or thing whatsoever existing as of the date of execution of this Agreement, WHETHER OR NOT KNOWN TO THE PARTIES AT THE TIME OF EXECUTION OF THIS AGREEMENT.

[2]b. This FULL WAIVER AND RELEASE OF ALL CLAIMS includes, without limitation, any attorney's fees, *any claims, demands or causes of action arising out of or relating in any manner whatsoever, to the employment relationship of GRADIS by BANNER* and to the events described in the Recitals Section above. This FULL WAIVER AND RELEASE OF ALL CLAIMS INCLUDES, BUT IS NOT LIMITED TO, any and all complaints, claims, charges, claims for relief, demands, suits, actions and causes of action, whether in law or in equity, which GRADIS asserts or could assert, at common law or under any statute, rule, regulation, order or law, whether federal, state, or local, or on any ground whatsoever . . . .

[2]c. In addition, in exchange for the promises contained in this Agreement and as a condition to receiving the above consideration in Paragraph 1, *GRADIS agrees not to institute,*

*nor cause to be instituted, any further legal proceeding*, including filing any charge, claim or complaint with any state or federal governmental agency alleging any violation of law or public policy, against BANNER and/or any other RELEASEE or any of their current, former or future affiliates, subsidiaries, divisions, corporate parents, partners, joint venturers, associates, agents (actual, apparent, ostensible or otherwise), board members, officers, directors, employees, medical staff members, physicians, (employed or unemployed), attorneys, employee benefit plans, predecessors and successors in interest and assigns, *premised upon any legal theory or claim whatsoever arising out of events occurring prior to the date of this Agreement*.

(Emphases added.)

**¶5**        In April 2014, Gradis sued Banner, alleging Banner breached its duty of good faith and fair dealing in handling her worker's compensation claim.  Banner moved for summary judgment, arguing the releases Gradis gave in the Agreement applied to her bad-faith claim.  The superior court granted the motion and dismissed the complaint.

**¶6**        We have jurisdiction of Gradis's timely appeal pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2017) and -2101(A)(1) (2017).[1]

### DISCUSSION

**¶7**        We review *de novo* the grant of a motion for summary judgment. *Espinoza v. Schulenburg*, 212 Ariz. 215, 216, ¶ 6 (2006).  "The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  We view the evidence and reasonable inferences in the light most favorable to the party opposing the motion. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 13 (2002).

**¶8**        Settlement agreements are governed by general contract-law principles. *Emmons v. Superior Court*, 192 Ariz. 509, 512, ¶ 14 (App. 1998). Courts attempt to enforce a contract according to the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993).  To determine the

---

[1]        Absent material revision after the relevant date, we cite a statute's current version.

parties' intent, we consider the meaning of the words and the "context of the contract as a whole." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009).

**¶9** The Agreement contains two broad releases, one described in paragraph 2(b) and the other described in 2(c). In paragraph 2(c), Gradis waived claims "premised upon any legal theory or claim whatsoever arising out of events occurring prior" to October 24, 2012, the date of the Agreement. The superior court reasoned the complaint was barred by this provision, but, as Gradis argues, some of the events that underlie her bad-faith claim against Banner (e.g., its allegedly bad-faith choice of a physician to perform an independent medical examination) occurred after execution of the Agreement.

**¶10** In paragraph 2(b), the Agreement described a "FULL WAIVER AND RELEASE OF ALL CLAIMS" that encompassed any claim "arising out of or relating in any manner whatsoever, to the employment relationship of GRADIS" with Banner.[2] Banner argues that its handling of Gradis's worker's compensation claim arose out of or related "in any manner whatsoever" to the employment relationship, and therefore is encompassed by the waiver. Gradis contends that, to the contrary, an employer's handling of a worker's compensation claim is distinct from the employment relationship.

**¶11** Arizona law requires all employers to secure worker's compensation insurance for their employees, but allows employers to self-insure if they can show "satisfactory proof of financial ability to pay." A.R.S. § 23-961(A)(1), (2) (2017). A self-insured employer may be liable for breach of the duty of good faith and fair dealing in its handling of an employee's worker's compensation claim. *Mendoza v. McDonald's Corp.*, 222 Ariz. 139 (App. 2009).

**¶12** Gradis argues that *Franks v. United States Fidelity & Guaranty Co.*, 149 Ariz. 291 (App. 1985), supports her contention that acts by a self-insured employer in handling a worker's compensation claim do not arise out of the employment relationship. In *Franks*, we held for the first time that an employee's bad-faith claim against a worker's compensation insurer is not subject to the exclusivity provision of the Worker's Compensation Act. 149 Ariz. at 296; *see* A.R.S. § 23-1022(A) (2017). We contrasted the

---

[2] Banner does not argue that the language of the first sentence in paragraph 2(b) was meant as a waiver of any claims, whether or not related in some way to Gradis's employment relationship.

injury an employee suffers from an insurer's breach of the duty of good faith with the original injury suffered from a workplace injury, and, using the words of the compensation statute, concluded that the former injury "does not arise out of and in the course of employment." 149 Ariz. at 296; *see* A.R.S. § 23-1021 (2017).

**¶13**        *Franks* does not dictate the meaning of the language the parties here chose to use in the Agreement. The statutory language we recited and applied in *Franks* was "arising out of and in the course of employment," which is the language by which Arizona law distinguishes injuries that are compensable under Title 23 from those that are not. Each element of that phrase has a separate meaning and serves a separate purpose. *See Keovorabouth v. Indus. Comm'n*, 222 Ariz. 378, 381, ¶ 8 (App. 2009) ("'Arising out of' refers to origin or cause of the injury, while 'in the course of' refers to time, place, and circumstances of the injury in relation to the employment."); *Lane v. Indus. Comm'n*, 218 Ariz. 44, 47, ¶ 9 (App. 2008) ("Although we must analyze the elements separately, 'in determining whether the necessary degree or quantum of "work-connection" is established to bring the claimant under the coverage of the Act, it is also necessary to consider them together.'"). To be compensable under Title 23, an injury must both "arise out of" and "in the course of" employment. *Noble v. Indus. Comm'n*, 188 Ariz. 48, 50 (App. 1996). *See, e.g., Circle K Store No. 1131 v. Indus. Comm'n*, 165 Ariz. 91, 93-94 (1990) (separate analysis for "arising out of" and "in the course of" elements); *Nowlin v. Indus. Comm'n*, 167 Ariz. 291, 293 (App. 1990).

**¶14**        By contrast, paragraph 2(b) of the Agreement provided that Gradis waived any claim "*arising out of or relating in any manner whatsoever*" to her employment with Banner. That language is far broader than the words of § 23-1022 that we applied in *Franks* ("arising out of and in the course of employment"). Injury caused by a self-insured employer's bad faith does not occur *in the course of employment*; it arises in the course of the employer's handling of the claim. But the employer's claims-handling certainly "aris[es] out of" and/or "relat[es] in any manner whatsoever" to the employment relationship. To be sure, an employer owes different duties to an employee when it acts as an employer and when it acts as its own worker's compensation carrier. But such an employer's claims-handling duties exist only because of the employment relationship. To state the obvious, in this context, Banner administered Gradis's worker's compensation claim only because that claim was for an injury Gradis alleged she suffered while working for Banner. But for the employment relationship, the bad-faith claim would not arise.

¶15            Gradis points out that the Agreement specifically excludes her worker's compensation claim. Contrary to her contention, however, the Agreement did not carve out from the otherwise broad waiver and release any claim that might relate to worker's compensation. The language the parties chose to describe the exception to the waiver is very precise: "This Agreement does not impact Gradis' application for worker's compensation or disability benefits, either positively or negatively." Consistent with that language, Gradis's worker's compensation claim proceeded through regular Industrial Commission channels to its ultimate resolution by the ALJ after a hearing, and there is no indication Banner used or attempted to use the Agreement as a defense in that proceeding.

¶16            As stated, a claim for worker's compensation benefits is distinct from a claim for breach of a worker's compensation insurer's duty of good faith and fair dealing. *Mendoza*, 222 Ariz. at 149, ¶ 31 ("bad faith is a separate tort, and not a direct or natural consequence of a compensable workers' compensation injury"). The narrow exception to the waiver in the Agreement was for Gradis's "application for worker's compensation" benefits, not for damages caused by Banner's alleged bad-faith handling of her worker's compensation claim. Although Gradis argues that the carve-out for her worker's compensation claim means the parties must have intended also to carve out any bad-faith claim arising from worker's compensation, the narrow language the parties used weighs against that construction. This is particularly so, given that they signed the Agreement five months after Banner denied Gradis's worker's compensation claim and three months after Gradis commenced her appeal of that denial.

¶17            Considering the Agreement's language and context, we construe its release and waiver provisions to include any claim for breach of the duty of good faith and fair dealing that might arise from Banner's handling of Gradis's worker's compensation claim.[3]

---

[3]            Because Gradis has no surviving substantive claim against Banner, we need not address her claim for punitive damages. *Quiroga v. Allstate Ins. Co.*, 151 Ariz. 127, 129 (App. 1986) ("The right to an award of punitive damages must be grounded upon a cause of action for actual damages.").

## CONCLUSION

**¶18** We affirm the superior court's entry of summary judgment against Gradis and in favor of Banner. We award Banner its costs and an amount of reasonable attorney's fees on appeal pursuant to A.R.S. § 12-341.01 (2017), contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA